*In re* MARRIAGE OF JERRIE A. ACKERMAN, Petitioner-Appellant and Cross-Appellee, and JOHN W. ACKERMAN, Respondent-Appellee and Cross-Appellant.

Second District   No. 2—87—0590

Opinion filed April 15, 1988.

Peter B. Nolte, of Sreenan & Cain, P.C., of Rockford, for appellant.

Bernard F. Healy, Jr., of O'Brien, Healy, Wade & Gorman, of Rockford, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This is an appeal from a judgment of dissolution of marriage and distribution of assets. We affirm in part and reverse in part.

Jerrie A. Ackerman and John Ackerman were married in 1962. Once married, the couple moved into a house on East State Street in Rockford, Illinois. This home was owned by John prior to the marriage. During their marriage, the parties had three children. The youngest was 15 at the time of the separation, and the other two were emancipated.

In 1978, the parties purchased 72 acres on East State Street in Belvidere, Illinois. This was the site of the family residence at the time of the divorce. The purchase price in 1978 was $97,000.

In 1985, the residence on East State Street was sold for $200,000, out of which $172,000 was netted. The sum of $39,000 (plus interest ($42,000)) was paid to Production Credit Association. The

sum of $100,000 was used to construct a house on the land in Belvidere.

In 1985, John and six siblings sold 74 acres of land which they had inherited from their father in 1974. John's share of the sale came in two installments, the first in May 1985 in the amount of $62,000 and the second in March 1986 in the amount of $68,000.

John placed the initial installment in an account in the Northwest Bank of Rockford in his name alone. John testified that Jerrie made repeated demands to have her name added to the account, and that when he told her he would not add her name to the account she left home for two days in August 1985. He further testified that she later returned and renewed her demands. According to John, she left again in September for a week and again in October for over two weeks. In November, John added Jerrie's name to the Northwest Bank account.

At the time of the parties' separation on April 21, 1986, the Northwest account had a balance of $63,000, of which Jerrie withdrew one-half. Jerrie also withdrew $5,795 from a checking account at the United Bank of Belvidere, which left an overdraft of approximately $4,200.

At the time of separation, there was also various farm machinery, the value of which was in dispute. Also at the time of separation, there was a Keogh account which the trial court valued at $25,000, and there was an entitlement to a deficit payment from the Federal government for crops in the amount of $30,300. Finally, the parties had accumulated various household goods and personal property.

After a hearing, the trial court issued an order distributing the property. In that order, the trial court found that the funds in the Northwest Bank account were marital property.

John was awarded a 1986 Oldsmobile, a truck, household goods, furnishings and furniture in his possession; his clothing and personal effects; farm machinery (valued at $32,300); Federal Land Bank stock; and crops in the field. The court valued these assets at $57,580. John was also awarded the Keogh Plan (valued at $25,000) and the deficit payment of $30,300.

Jerrie was awarded a 1985 Oldsmobile; her jewelry; household goods, furniture, and furnishings in her possession; her clothing and personal effects; interest in an oil well and accompanying documents. The court valued these assets at $15,340.

John was further ordered to pay Jerrie $15,500 within 30 days of the written order. Each party was awarded the accounts listed in his or her own name. John's totaled $44,000 plus a farm checking account with no stated value, plus $1,500 (balance of marital account).

Jerrie kept one-half of the Northwest Bank account ($31,500) and $5,795 from the checking account ($37,295).

John was given possession of the real estate until Shawn graduated or otherwise left high school. At that time, the real estate was then to be sold and the net proceeds of the sale equally distributed between the parties.

Maintenance was also awarded to Jerrie in the amount of $175 per week. Finally, the court awarded Jerrie $2,200 in attorney fees. Custody of the youngest child was given to John.

Finally, John was ordered to pay the farm and preseparation debts of the parties.

Jerrie filed a notice of appeal on June 22, 1987.

On September 25, 1987, the trial court entered an order based on a stipulation and agreement of the parties. The order stated:

"A. That the Plaintiff accept and the Defendant pay to the Plaintiff the sum of $27,000.00 as and for her full and complete interest in the marital home and farm.

B. That upon receipt of said payment, by Defendant to Plaintiff, there is nothing further additional due and owing between the Plaintiff and the Defendant pursuant to the Judgment of Dissolution entered in this cause.

C. That the Defendant's claim for fees and costs be denied.

D. That the Defendant not be entitled, as of this date, to support for the minor child that he has in his custody."

Based on the September 25 order, John moved to dismiss the present appeal, and on October 27, 1987, this court ordered that John's motion to dismiss be taken with the case.

On appeal, Jerrie contends that the trial court abused its discretion when distributing the property. On cross-appeal, John contends that the funds in the Northwest Bank account were not marital property and that the trial court had improperly awarded attorney fees to Jerrie.

We begin our analysis by addressing John's contention that the September 25 order constituted a release of errors.

■ Under the doctrine of release of errors, a party to a divorce decree cannot accept those portions of the decree which are beneficial to her and later prosecute an appeal to reverse those portions of the decree which are unfavorable to her, where to do so would place the opposing party at a distinct disadvantage upon a reversal of the decree. (*In re Marriage of Hobbs* (1982), 110 Ill. App. 3d 451, 453.) However, the doctrine is inapplicable where an appellant accepts a share of the proceeds of jointly owned property because, in such a

case, the appellant is merely exchanging interests. 110 Ill. App. 3d at 453.

▪ In the instant case, the order entered by the trial court on September 25, 1987, constituted a mere exchanging of interests, as the $27,000 received by Jerrie was for her interest in the marital home and farm. Therefore, the order of September 25, 1987, did not constitute a release of errors. (See 110 Ill. App. 3d at 453 (no release of errors where wife transferred quitclaim deed and accepted $12,500).) We therefore consider the merits of the case.

Jerrie contends that the trial court abused its discretion when it distributed the marital property. We disagree.

▪ Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that marital property should be divided in just proportions. (Ill. Rev. Stat. 1985, ch. 40, par. 503.) This section does not, however, require an equal distribution of property. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37.) The proper division of marital property rests within the sound discretion of the trial court. (*In re Marriage of Rapacz* (1985), 135 Ill. App. 3d 1045, 1048.) It will not be reversed absent an abuse of discretion. (135 Ill. App. 3d at 1048.) From our review of decisions under the Act, it is evident that what constitutes a just division may vary widely. *E.g., In re Marriage of Frazier* (1988), 164 Ill. App. 3d 207 (division of $187,854.82 to one party and $48,354.83 to the other affirmed); *In re Marriage of Stephenson* (1983), 121 Ill. App. 3d 698, 699 (75% of marital property to one party affirmed); *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 286-87 (award of 26% of marital property to one party affirmed); *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 1131 (60%-40% division, not an abuse of discretion).

▪ In the instant case, Jerrie was awarded $95,135 of the marital assets (one-half of the Northwest Bank account, $31,500; $5,795 she took from the checking account; one-half interest in the equity of the marital residence, $27,000; a $15,500 payment from John; and other property valued by the court at $15,340) and $175 per week in maintenance. John was awarded $151,680 of the marital assets (the Keogh plan, $25,000; Federal deficit crop payment, $30,300; one-half of the Northwest Bank account, $31,500; one-half interest of the equity in the marital residence, $27,000; and other property valued at $57,580 minus $15,500 payment to Jerrie and the overdraft of $4,200) and was ordered to pay the farm and preseparation debts of the parties. John was also given custody of the couple's youngest son, who was 15 at the time. In light of the fact that John was responsible for their youngest son, the farm and preseparation debts, and payments

of maintenance, we hold that the trial court's division of marital assets was not an abuse of discretion.

In his cross-appeal, John contends that the trial court erred in finding that the funds in the Northwest Bank account were marital assets. John argues that he rebutted the presumption that a gift had been made of those funds.

■ The placing of title to nonmarital property in joint tenancy with a spouse raises a presumption that a gift was made to the marital estate. (*In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 257.) The presumption of a gift may be rebutted by clear, convincing, and unmistakable evidence. 136 Ill. App. 3d at 257.

■ In the instant case, the evidence showed that John had received the Northwest Bank funds from an inheritance and that he had originally opened the Northwest Bank account in his name only. The evidence further showed that John had eventually changed the account to include Jerrie's name after many demands by her to do so. A presumption of a gift thus arose. From a review of the record we find that this presumption was not rebutted by clear, convincing, and unmistakable evidence. We note that John stated that he had intended the money in the account to be used for the retirement of both Jerrie and himself. We find that this in itself indicates an intent of joint use and thereby indicates an intent to make a gift. We therefore hold that the trial court did not err in holding that the funds in the Northwest Bank account were marital property.

John's final contention on cross-appeal is that the trial court erred in awarding attorney fees to Jerrie. John argues that the record contains no foundation for attorney fees with the exception of Jerrie's testimony that she withdrew $2,200 and paid her attorney in that sum. We agree.

■ A party seeking attorney fees must show financial inability to pay, financial needs within the context of the prior couple's standard of living, and the ability of the other spouse to pay. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 599; see also *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 229.) And, before awarding fees in a divorce proceeding, a trial court must consider the relative financial abilities of the parties, the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the attorney, and the time and labor involved. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582.) It is axiomatic that before a trial court can consider these factors it must be made aware of them. Some factors, such as the relative financial abilities of the parties, the nature of the controversy,

and the skill of the attorney will become evident during the proceedings, and no independent proofs need be made concerning such factors. However, such factors as the amount of time and labor involved in a case do not come out in the ordinary course of proceedings. Thus, such factors require independent proof including the number of hours involved in the case and the work being performed. See *In re Marriage of Collins* (1987), 154 Ill. App. 3d 655, 660.

■ In the instant case, no proof was made of the hours involved in the case or the work performed. The only evidence that was presented was that Jerrie had paid $2,200 in attorney fees. Such a showing was insufficient. We therefore hold that the award of attorney fees was improper. From a review of the record we further hold that Jerrie had the financial ability to pay attorney fees and that the award of fees was thus an abuse of discretion. For the foregoing reasons, we reverse the award of attorney fees.

Affirmed in part; reversed in part.

NASH and REINHARD, JJ., concur.