*In re* MARRIAGE OF MILDRED F. STEELE, Petitioner-Appellee, and LAWRENCE E. STEELE, Respondent-Appellant.

Fifth District   No. 5—90—0193

Opinion filed May 1, 1991.

426

Michael J. Meyer, of Law Offices of Michael J. Meyer, of Effingham, for appellant.

Marilyn B. Resch and Kim L. Spaits, both of Parker, Siemer, Austin, Resch & Resch, of Effingham, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The respondent, Lawrence E. Steele, appeals from the circuit court's order denying his motion to vacate judgments, to reopen proofs, and for a rehearing and from the court's division of the marital property resulting from the dissolution of his marriage to the petitioner, Mildred F. Steele. On appeal, the respondent contends that the court erred in awarding the petitioner a portion of his employment benefits which were acquired after their separation; that the court erred in awarding the petitioner 50% of his employment benefits that were acquired during their marriage; and that the court erred in denying the respondent's motion to vacate judgments, to reopen proofs, and for a rehearing.

The petitioner and the respondent were married on May 31, 1973. On June 8, 1983, the petitioner filed a petition for dissolution of marriage, a petition for temporary relief, and an affidavit in support of her petition for temporary relief. Although an order granting temporary relief to the petitioner does not appear in the record, from various

statements in the record, it appears that the respondent was ordered to pay the petitioner temporary maintenance, *i.e.*, the respondent was required to pay the mortgage payments and the utilities bills on the house where the petitioner was living. It also appears from the record that the hearing on grounds for the dissolution was heard at the same time as the petition for temporary relief, but that an order dissolving the marriage was not entered immediately following the hearing.

On May 26, 1986, a hearing was held on the division of the marital property. Subsequently, an order dissolving the marriage was entered on March 19, 1987. In the order dissolving the parties' marriage, the court reserved its ruling on the remaining issues of property and maintenance. Ultimately, the order dividing the parties' marital and non-marital property was entered on November 22, 1989. The respondent filed a post-trial motion on December 22, 1989, in which he sought to vacate the judgments, to reopen proofs, and a rehearing. A hearing on the respondent's post-trial motion was held on February 26, 1990, and the court denied the respondent's motion.

At the hearing on the division of the parties' property, the petitioner testified that she was 59 years of age, and her current source of income was through general relief, from which she earned $70 a month for 16 hours of work. She lived in the parties' home in Wapakoneta, Ohio. This home and the parties' residence in Edgewood, Illinois, were both purchased during the marriage. The petitioner stated that during the marriage, she had once worked at a truck stop washing dishes for a month or six weeks, and, on another occasion, she had worked for two weeks as an assistant cook at the county jail. According to the petitioner, the respondent had preferred that she work at home. Before her marriage to the respondent, the petitioner had worked summers at a laundry, and she had also worked as a nurse's aide at a nursing home. She was now unable to do this type of work because of medical problems with her lower back. Her education consisted of an eighth-grade education and a nurse's aide diploma. The petitioner had taken the GED examination in 1974 or 1975; however, she did not pass the mathematics portion of the exam. Since her separation from the respondent, the petitioner had sought work, but she had been unable to find employment.

The petitioner further testified that, in addition to her back problems, she has spurs on her left heel and her right ankle which prevent her from standing for any length of time. Additionally, the petitioner had suffered upon occasion from deep depression, and, in either 1980 or 1981, she was hospitalized for this problem. She takes medication

consisting of a "nerve pill" and high blood pressure pills. She also had bladder operations in 1981 and 1983.

The petitioner had been married three times prior to her marriage to the respondent, and she had seven children as a result of her prior marriages; however, she had no children to the respondent. During the marriage, the respondent had helped support her children. At the time of the hearing, the petitioner's children were emancipated and were not dependent on her.

The petitioner testified that, other than the two homes owned by her and the respondent, she owned no other real estate. At the time of her marriage to the respondent, the petitioner had owned a home and five rooms of furniture. She sold the home, for which she received $4,000. Most of the furniture the petitioner had brought into the marriage was now in the possession of the respondent. The petitioner explained that she had no bank accounts, no certificates of deposits, and no stocks or other investments. During their marriage, the respondent's parents gave her and the respondent $2,500, which had been held in a joint account in the Illinois Guarantee Savings and Loan. She stated she had not consented to the respondent's withdrawal of this money. The petitioner admitted that the respondent had been paying the mortgage and the utilities on the home in Wapakoneta since their separation. In the petitioner's financial statement, she listed her total monthly expenses as being approximately $1,000.

The respondent testified as an adverse witness for the petitioner and in his own behalf. He testified that he and the petitioner were married on May 31, 1973, and that they had separated on March 12, 1983. He was employed as a terminal operator for Shell Pipeline (Shell), a position he had held for 32 years. His current hourly rate was $14.55 per hour for a 40-hour work week; however, he sometimes worked overtime. In 1985, the respondent earned a bonus of $15,000 from his employment, and that year (1986), he had received a bonus of $1,000. As part of his employment with Shell, the respondent has certain benefits which will be distributed to the respondent upon his retirement. These benefits consisted of his pension fund, a stock ownership fund, and a fund called the Shell Provident Fund (Provident Fund). Although these various benefits are to be distributed upon his retirement, the Provident Fund permits him to remove a certain amount from the Provident Fund periodically. In fact, the respondent withdrew approximately $30,000 in 1983 in order to pay an income tax bill of $10,000 and other bills. The remainder of the money, about $14,000, he placed in a certificate of deposit. In a financial statement

completed by the respondent for a bank loan, the respondent gave the value of his benefit accounts with Shell as being $270,000.

The respondent corroborated the petitioner's testimony that they had purchased the home in Ohio and in Illinois during their marriage. In addition to this real estate, the respondent stated that he also owned a one-acre lot in Terre Haute, Indiana, worth $5,000 and 56 acres of farmland in Effingham, Illinois, worth $56,000, both of which he had purchased before his marriage to the petitioner. In addition, he was currently negotiating the purchase of over 132 acres of farmland across the road from the 56 acres he already owned. A residence was also on this land. To purchase the land, the respondent had withdrawn the $14,000 certificate of deposit and had applied to withdraw $9,000 from the Provident Fund to make the down payment. He stated he intends to sell the marital home in Edgewood and move into the residence on the land.

The respondent testified that he has two bank accounts, the "farm account" at the Effingham State Bank wherein he places the farm income, and a joint bank account with the petitioner at First National Bank. The respondent deposited his paychecks into the joint account, and sometimes, he deposited small farm checks there as well. The respondent did not think the "farm account" was a joint account, but he admitted that money was withdrawn from that account for family use. The "farm account" had a balance of approximately $3,000, and the joint account had a balance of about $150. The respondent admitted that his parents had given him and the petitioner $2,500, and that he had withdrawn this amount from their account.

The respondent stated that he had owned certain farm equipment before his marriage to the petitioner; however, some of the farm equipment was also purchased during the marriage. Additionally, the respondent owned several vehicles when the parties married, and a few vehicles were acquired during the marriage. The respondent further stated that he had three life insurance policies on his life, a policy with a face value of $1,000 with Royal Neighbor bought by his parents at his birth; a policy with a face value of $5,000 or $6,000 with Kansas City Life which was purchased in 1956; and a policy with a value of $30,000 (approximately his yearly income) with Shell.

The respondent testified that, under a temporary order for maintenance entered by the court, he had been paying the mortgage payments, the utilities, and the house insurance on the marital home in Ohio. The monthly mortgage payment on the residence was $227 a month. The respondent stated that, other than the petitioner, there was no one dependent upon him for support.

In addition to the parties' testimony, a stipulation was admitted into evidence. The stipulation established that the fair market value of the marital home in Ohio was $25,000, with a mortgage of $20,451; that the fair market value of the home in Edgewood, Illinois, was $25,000, with a mortgage of $19,364; that the one acre of land in Terre Haute, Indiana, and the 56 acres of land in Effingham County had fair market values respectively of $5,000 and $56,000 and were the non-marital property of the respondent; that the total fair market value of the 132 acres of farmland and the 4.4 acres of land containing a residence which the respondent had contracted to buy was $153,600, the down payment of which was from the $14,000 certificate of deposit and $9,000 from the Provident Fund; that the value of the household goods and furnishings acquired by the parties during the marriage was $2,500, $2,400 of which was in the possession of the respondent and $100 of which was in the possession of the petitioner; that the value of the farm equipment acquired during the marriage was $15,000, and the value of the farm equipment owned by the respondent prior to the marriage was $10,000; that the parties acquired four vehicles during the marriage worth a total value of $1,100, while the value of the vehicles acquired by the respondent prior to the marriage was $1,400; that the parties' joint tax refund from 1982 in the amount of $4,155.61 was being held in trust by a law firm, and that the parties had also received a 1984 tax refund of $1,507.50 which had been returned to the Internal Revenue Service by the respondent; and that the respondent had used the joint gift of $2,500 given to the parties by the respondent's parents for his own needs.

At the close of the hearing, the case was left open for the parties to submit documentation on the value of the respondent's employment benefits and for the submission of written final arguments. The petitioner subsequently submitted a brief containing her arguments and memorandum of law to the court on February 10, 1989, but the respondent failed to submit a written argument. Documents regarding the respondent's employment benefits were also submitted, but these documents did not clearly set forth the value of the respondent's benefits. The court entered an order dissolving the marriage on March 19, 1987, and eventually entered its order on the division of property on November 22, 1989.

In the court's order of November 22, 1989, the court distributed the parties' property as follows: To the petitioner the court awarded the home in Ohio, subject to the debts thereon (fair market value of $25,000); the household goods in her possession ($100); the cash value of one half of the farm equipment purchased during the marriage

($7,500); one half of the 1982 tax refund of $4,155.61 ($2,077.80); one half of the bank accounts ($1,575); 50% of the value of the portion of the various employment benefits (the pension plan, the stock ownership plan, and the Provident Fund) accrued by the respondent from May 31, 1973, until May 22, 1986; the life insurance policies were awarded to the party whose life was covered in the policy; each party was awarded the motor vehicles in their possession; and the petitioner was also held responsible for debts accrued by her since her separation from the respondent. Additionally, the court determined that the respondent had withdrawn funds from bank accounts and certificates of deposit which were properly marital property, and, therefore, in lieu of maintenance and as a setoff of the amounts withdrawn, the court awarded the petitioner a lump sum of $10,000 to be paid by the respondent in monthly payments of $500 per month. The court also ordered the respondent to pay $2,000 of the petitioner's attorney fees.

As noted previously, the respondent filed a motion to vacate judgments, to reopen proofs, and for a rehearing on December 22, 1989. In his motion, the respondent alleged (1) that he paid the petitioner substantial sums both prior and subsequent to the hearing on May 22, 1986 (approximately $32,000), and that the court failed to consider these payments when making its distribution of property, and (2) that the distribution of the marital property by the court was contrary to law and the evidence. The court denied this motion, and the respondent appeals.

■ The first issue on appeal raised by the respondent is that the court erred in awarding the petitioner a portion of his employment benefits that were accrued after the hearing on grounds and the order for temporary maintenance entered on August 16, 1983. The thrust of the respondent's argument is that the parties were separated at the time the temporary maintenance order was entered, and that their *de facto* separation met the criteria of a legal separation at that time. The respondent urges this court to equate a *de facto* separation with a legal separation and to find that the employment benefits accrued after the temporary maintenance order are nonmarital property under section 503(a)(3) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1989, ch. 40, par. 503(a)(3).

A similar argument was made in *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267. The court in *Brooks* stated that under the statute, property acquired during the marriage and before the date of dissolution is presumed to be marital property (Ill. Rev. Stat. 1989, ch. 40, pars. 503(a),(b)), and that the burden is upon the party seeking to rebut this presumption to do so by clear evidence that

the property is statutorily exempted. (*In re Marriage of Brooks*, 138 Ill. App. 3d 252, 486 N.E.2d 267.) The court in *Brooks* refused to find that property acquired after the parties had separated but before the marriage was legally dissolved was nonmarital property, because to do so would be to create "common law divorce." We agree with the reasoning in *Brooks* and find that the portion of the respondent's employment benefits accrued after the parties' separation and prior to the dissolution of the marriage was marital property and that the court properly awarded the petitioner a portion of this asset.

The respondent's next contention is that the court abused its discretion in awarding the petitioner 50% of his employment benefits accrued during the marriage. In support of his argument, the respondent contends that the court abused its discretion as it failed to take into consideration that the petitioner did not contribute as a homemaker after their separation and that she made no monetary contribution to this asset.

In our consideration of this issue, we initially note that the respondent does not contest the classification of this asset as marital property, which it was correctly determined to be (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 518 N.E.2d 1316), and he does not object to the valuation of this asset. Further, the respondent does not argue that the overall distribution of the marital property was an abuse of discretion, but he objects only to the division of this particular asset. The fairness of the distribution of marital assets cannot be dealt with on a piecemeal basis, as the respondent would have this court do here, but the distribution as a whole must be considered to determine if the distribution of the assets was made in just proportions as required by the statute. Ill. Rev. Stat. 1989, ch. 40, par. 503(d).

A circuit court has broad discretion in distributing marital property, and, absent an abuse of discretion, the court's distribution will not be overturned upon review. (*In re Marriage of Benz*, 165 Ill. App. 3d 273, 518 N.E.2d 1316.) Whether an apportionment was just depends on whether it was equitable in nature, and equitableness does not dictate that the division must be equal; however, an award splitting the property into equal halves will not be overturned on that basis alone. *In re Marriage of Benz*, 165 Ill. App. 3d 273, 518 N.E.2d 1316.

In distributing marital assets in just proportions, the statute provides 11 criteria for a court to consider in making its determination. (Ill. Rev. Stat. 1989, ch. 40, par. 503(d).) Of the criteria enumerated in the statute, those pertinent to this case are: the contribution or dissipation of each party in the acquisition, preservation, or appreciation of the marital and the nonmarital assets, including the contribu-

tion of a spouse as a homemaker; the value of the property awarded to each; the duration of the marriage; the economic circumstances of each spouse; the age, health, occupation, amount and sources of income, vocational skills, employability, liabilities, and needs of each of the parties; whether the apportionment is in lieu of maintenance; and the reasonable opportunity of each spouse for future acquisition of assets and income. The evidence in the instant case established that the petitioner was 59 years of age, close to retirement age; that she had an eighth-grade education and no occupational training; that she had not worked the majority of the time she was married to the respondent, but that she instead worked as a homemaker for approximately 10 years; that the parties were married about 13 years; that the petitioner was unemployed and her only income was through general relief; that the petitioner's health prevented her from working; that the petitioner had no other property other than that acquired during her marriage to the respondent; and that the petitioner had no reasonable opportunity for acquiring assets or income in the future. In contrast, the respondent was employed and earned $30,000 to $45,000 annually (depending upon the overtime worked and the bonuses awarded); he had nonmarital farmland from which he received rental income; and he had substantial investments in his employment benefits, some of which were obtained during the marriage.

The court, in its distribution of assets, awarded the petitioner approximately $36,252.80 in marital assets, plus $10,000 as a setoff for the marital assets dissipated by the respondent and 50% of the respondent's employment benefits accrued during the parties' marriage. The court awarded the respondent an equal share of the marital assets, plus all of his employment benefits (minus the 50% of the benefits accrued during the marriage), and his nonmarital income-producing assets worth $61,000. In addition, the court was aware that the respondent was negotiating the purchase of over 132 acres of income-producing farmland at the time of the hearing. Under these circumstances, the court's distribution was in just proportions, including the award of 50% of the respondent's employment benefits acquired during the marriage, and the court's distribution was not an abuse of discretion.

The last issue raised by the respondent is that the circuit court abused its discretion in denying his post-trial motion to vacate the judgment, to reopen proofs, and for a rehearing. The respondent argues that the court's denial of his motion prevented him from presenting evidence of the payments made by him to the petitioner under the temporary order for maintenance both before and after the hearing held on May 22, 1986, thereby causing him a great injustice. The re-

spondent contends that he was entitled to a setoff for these payments in the distribution of the marital property.

■■ The test for whether a court abused its discretion in denying a post-trial motion is " 'whether the refusal violates the moving party's right to fundamental justice and manifests an improper application of discretion.' " (*Harris v. Harris* (1977), 45 Ill. App. 3d 820, 821, 360 N.E.2d 113, 115, quoting *Anderson v. Anderson* (1975), 28 Ill. App. 3d 1029, 1034, 329 N.E.2d 523, 527.) In seeking to vacate a judgment and to reopen proofs, the purpose of the motion is to alert the court that errors have been made and to provide an opportunity for their correction. (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192.) Additionally, to justify a rehearing based upon new evidence, a showing of due diligence and a demonstration that justice has not been done must be made. *In re Marriage of Sanborn*, 78 Ill. App. 3d 146, 396 N.E.2d 1192.

■■ Here, the respondent has not shown that the alleged new evidence he wanted to present, *i.e.*, the payments of temporary maintenance, was not considered by the court in its decision, and he has not shown that this evidence could not have been presented prior to the court's order distributing the marital property with due diligence on his part. The court, at the hearing on the post-trial motion, expressly stated that it had considered the payments made by the respondent for the temporary maintenance when it allocated the marital assets to the parties. Thus, it is apparent, contrary to the respondent's argument, that the court did consider these matters. Further, as to the payments made following the hearing of May 22, 1986, the respondent was given an opportunity to file a written final argument in which he could have raised the matter of the subsequent support payments and his right to a setoff. The respondent failed to file such a document. Therefore, it cannot be said that the respondent exercised due diligence in bringing this matter to the court's attention when he had an opportunity to do so. We find that the court did not abuse its discretion in denying the respondent's post-trial motion.

For the foregoing reasons, the judgment of the circuit court of Effingham County is affirmed.

Affirmed.

HOWERTON and CHAPMAN, JJ., concur.