*In re* MARRIAGE OF CHARLES MORRIS, Petitioner-Appellee, and MERCEDES THOMAS MORRIS, Respondent-Appellant.

Second District    No. 2—93—0913

Opinion filed September 15, 1994.

PECCARELLI, J., dissenting.

Mercedes Thomas Morris, of Greensboro, North Carolina, appellant *pro se.*

Paul R. Cicero, of Vedder, Price, Kaufman & Kammholz, of Rockford, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Petitioner, Charles Morris, married respondent, Mercedes Thomas Morris, on July 1, 1967. On June 29, 1993, the trial court entered a judgment which dissolved the marriage and ordered a dis-

tribution of the couple's marital property. The trial court awarded respondent 6% of one of petitioner's pensions but no share of petitioner's other pension or his lottery winnings. Respondent was also awarded her retirement fund, which she had already liquidated. Respondent appeals, contending that the trial court's apportionment of the marital property constituted an abuse of discretion. We reverse and remand.

Petitioner and respondent lived together after their marriage in 1967 for approximately two years. After that time, the couple agreed to live separately. In 1991, petitioner filed for dissolution of marriage, alleging that the couple had no children, that as a result of irreconcilable differences the parties had separated and were not living together, and that the parties had not acquired any property jointly or as a result of mutual effort or contribution since their separation. Respondent did not appear at the hearing and a default judgment was entered. Thereafter, respondent appeared and moved to vacate the default. The trial court granted the motion to vacate and the cause proceeded to a hearing.

Although the parties' testimony differs as to the extent of contact they maintained over the years, both parties agree that neither obtained financial assistance from the other through the years that followed their separation. Respondent did say that, if she needed financial support from her husband, he refused to give it to her. The couple kept in touch by telephone, and, according to respondent, they met and engaged in sexual relations with each other on a number of occasions until 1989. During the years that the couple lived independently, respondent was involved in other relationships with men. Specifically, she admitted to two long-term relationships, although she did not live with the men or receive support from them.

Respondent testified that she was presently employed in the mortgage department of Chase Manhattan Bank and was making approximately $13,000 per year. Before that, she worked for the Social Security Administration from 1972 until 1981 and made approximately $8,000 per year. When she left that job, she liquidated her retirement fund which had approximately $4,000. At the time of the hearing, respondent testified that she was currently unable to work because she had undergone arthroscopic knee surgery and that her father was helping her financially. She also testified that she had heart problems and hypertension. Respondent lived in Rockford, Chicago, California, and Florida during the years that the couple were separated.

Petitioner testified that, other than a few communications, the couple had not been in touch in the interim since their separation

over 20 years before. According to petitioner, respondent had not asked for support in all that time, and neither party had given property to the other. Respondent had not done any household chores for petitioner since their physical separation.

Petitioner had worked for W.F. and John Barnes (Barnes) for 19 1/2 years until the company went out of business. Then petitioner worked for Ingersoll for eight years. He had a pension plan at Barnes and was unsure if he had one at Ingersoll, but he knew that he could not collect until he was 62 years old from the Barnes pension and 65 years old from the Ingersoll pension. At the time of the hearing in March 1993, petitioner was 51 years old. Petitioner had not told his employers that he was married and, in fact, had signed a document while at Ingersoll stating that he was not married. Petitioner had designated his aunt as the beneficiary of the pension plans. Neither side introduced evidence to establish the value of petitioner's pension rights.

Petitioner's main asset was his income from winning the Illinois State lottery. The lottery jackpot was $2.9 million dollars, with petitioner's sister receiving 35% and petitioner receiving the other 65%. Petitioner would collect payments of approximately $70,000 after taxes for 20 years. He received his first payment in November 1992. With the winnings, he bought a $25,000 car, made a $20,000 payment on a house for his mother, and put $35,000 into a savings account. Petitioner also helped two of his children (not respondent's), born during his marriage to respondent, pay for their education. He was also paying child support for a third child, also born during petitioner's marriage to respondent.

Petitioner testified that, other than his pensions and lottery winnings, he had a 1992 Buick and a rather minimal amount of furniture. He earned approximately $22,000 in 1989 and $24,000 in 1991 and 1992. Respondent testified that in 1989 she took a pay stub from petitioner's apartment. The stub was introduced into evidence and reflected that on December 22, 1989, petitioner had earnings that year totalling $28,400. Petitioner testified that he had "lung problems," and he stated that one of his lungs had collapsed a year before.

According to petitioner, he had sought a divorce several years after they separated, but respondent said that she would not give him a divorce. It was further established that respondent had previously seen an attorney about instituting divorce proceedings, but petitioner did not have half of the money to pay for the divorce and the couple never obtained the divorce.

The trial court specifically found petitioner's lottery winnings to

be marital property, but because there was no "shared enterprise," the court awarded the total winnings to petitioner. The trial court found the petitioner's contract to share the lottery winnings with his sister and petitioner's support of his children were not dissipation of a marital asset. The trial court found respondent's liquidation of her retirement fund was not dissipation, and the court awarded the fund to respondent. Finally, the trial court awarded respondent 6% of petitioner's pension with Barnes and stated that the percentage was arrived at by first dividing the total years of contribution by the two years that respondent and petitioner were married while petitioner was contributing; that percentage was then reduced to 6% to account for the "end contribution factor."

On appeal, respondent asserts that the trial court abused its discretion in apportioning the marital property. Specifically, she argues that the trial court unjustly awarded the entirety of the lottery winnings to petitioner. We agree.

Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that marital property should be divided in just proportions. (750 ILCS 5/503(d) (West 1992).) Just or equitable apportionment does not necessarily mean equal division. (*In re Marriage of Siddens* (1992), 225 Ill. App. 3d 496, 500.) The proper division of marital property rests within the sound discretion of the trial court. (*In re Marriage of Ackerman* (1988), 168 Ill. App. 3d 438, 442.) The reviewing court will not disturb the judgment unless an abuse of discretion is shown. (*Siddens*, 225 Ill. App. 3d at 500.) The question is not whether we agree but only whether the trial court exceeded the bounds of reason so that no reasonable person would take the view adopted by the trial court. *Siddens*, 225 Ill. App. 3d at 500.

First, we note that the trial court's determination that the lottery winnings were marital property is correct. The theory advanced by section 503 is that marriage is a shared enterprise or a partnership. (*In re Marriage of Mahaffey* (1990), 206 Ill. App. 3d 859, 866.) It is to foster the principle of marriage as a functional partnership that section 503(b) creates a presumption that all property acquired by either spouse after marriage and before a dissolution of the marriage is marital property. (750 ILCS 5/503(b) (West 1992); *Mahaffey*, 206 Ill. App. 3d at 867.) The Act specifically allows the presumption to be rebutted, but only under certain circumstances not applicable to the situation at hand. (See 750 ILCS 5/503(a) (West 1992).) However, while the trial court in this case specifically found the property to be marital property, its determination that there was no marital relationship after the initial two years, no shared

enterprise, and thus no right for respondent to take a portion of the winnings effectively recognized the date of the physical separation of the parties as the last date for marital property rights to accrue. To hold that the parties did not accrue marital property after the date of physical separation would be to recognize "common law divorce," and the law and public policy do not support such a result. *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 259.

Since it is uncontroverted that the money for the lottery ticket came from petitioner at a time when he was still married and the irrevocable right to receive the lottery payments was established during the marriage, the winnings are presumed to be marital property under section 503. (*Mahaffey*, 206 Ill. App. 3d at 867.) The fact that the payments are made solely in petitioner's name and that the majority of the lottery payments would not be received until after entry of the judgment of dissolution of marriage does not change the fact that the winnings are marital property. (*Mahaffey*, 206 Ill. App. 3d at 868.) Moreover, it is not particularly important who actually bought the winning ticket since there was little effort or investment, but there was a large payout as a result of a fortuitous circumstance. *Mahaffey*, 206 Ill. App. 3d at 871.

■ In determining how to divide the property in just proportions, the trial court is to consider all relevant factors, including:

"(1) the contribution of each party to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the dissipation by each party of the marital or non-marital property;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(6) any obligations and rights arising from a prior marriage of either party;

(7) any antenuptial agreement of the parties;

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(9) the custodial provisions for any children;

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(12) the tax consequences of the property division upon the respective economic circumstances of the parties." (750 ILCS 5/503(d) (West 1992).)

Obviously, under the unusual circumstances of this case some of these factors will have little applicability. Nevertheless, some of these factors do apply and would require some apportionment of the lottery proceeds. As to the fourth factor, the duration of the marriage, the trial court must take into account that the couple was married in excess of 20 years. To recognize only the two years that the couple lived together, as the trial court did in apportioning the pension and denying apportionment of the lottery proceeds, is to view the physical separation as a "common law divorce." As we have already stated, this is not permissible.

With regard to the pension rights, we also note that the evidence was not clear as to whether petitioner had pension rights at his second job at Ingersoll. An interest in a pension plan, if a portion accrues during marriage, is marital property. (*Robinson v. Robinson* (1986), 146 Ill. App. 3d 474, 475.) Furthermore, neither side offered evidence as to the value of the pension plan or plans. To apportion assets in a just manner under section 503(c), the value must first be established. (*In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 260.) On remand, the parties should introduce evidence as to the value of petitioner's pension plan or plans.

■ Because the trial court only considered the couple to have been married for two years and found that the lottery proceeds were not subject to apportionment because there was no shared enterprise at the time petitioner purchased the winning lottery ticket, we hold that the trial court abused its discretion in its apportionment of the marital property. A vast disparity in the proportionate disposition of marital property, as occurred here, can only be justified under the most extraordinary circumstances. While the circumstances here are unusual and might support an apportionment in unequal shares, the trial court abused its discretion in denying respondent a portion of the couple's one major asset, the lottery winnings.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

QUETSCH, J., concurs.

PECCARELLI, J., dissenting:

I agree with the majority's determination that the lottery winnings were marital property. I dissent because I do not believe the trial court's apportionment of the marital property constituted an abuse of discretion.

In *In re Marriage of Mahaffey* (1990), 206 Ill. App. 3d 859, cited by the majority, one spouse purchased a winning ticket in the Illinois lottery worth approximately $3.6 million. On appeal, the court rejected the petitioner's contention that the lottery winnings should be treated as income rather than marital property. The fact that the payments were made solely in the name of the petitioner was irrelevant to the court's determination that the winnings should be treated as marital property. Since the petitioner acquired the right to receive future payments during the course of the marriage, the winnings were determined to constitute marital property. I do not dispute this rationale. However, I believe the unusual circumstances surrounding the marriage of the parties in the instant case justifies a disproportionate award.

The majority declares that the theory advanced by section 503 of the Act (750 ILCS 5/503 (West 1992)) is that marriage is a "shared enterprise" or a "partnership." As noted in *Mahaffey* (206 Ill. App. 3d at 866), a marriage is similar to a commercial partnership, wherein the parties share duties and divide their labor toward a common goal. The concept of marriage as a "shared enterprise" reflects the modern day recognition that it takes the joint efforts of married persons to acquire property. *Mahaffey*, 206 Ill. App. 3d at 868.

Contrary to *Mahaffey*, wherein the parties remained married for 20 years, gave birth to two children, and both contributed to the stability of the family, the parties in this case did not have a family. Although the couple remained married for 26 years, they separated after two years and lived apart for 24 years. It is undisputed that the parties lived entirely separate lives. The petitioner did not contribute to the respondent's financial support and vice versa. The parties maintained separate residences and were involved in other personal relationships. I believe that the majority places undue emphasis on evidence that, subsequent to the separation, the couple kept in contact by telephone and met and engaged in sexual relations on numerous occasions. This fact is irrelevant since it is undisputed that after the parties separated, they contributed little or nothing to the marriage as a "shared enterprise."

The purpose of section 503(d) of the Act is to divide marital property in just proportions, considering all relevant factors, including

statutory factors. (750 ILCS 5/503(d) (West 1992).) The Act directs the trial court to consider, *inter alia*, the relative contributions of each party to the marriage, the duration of the marriage, the economic circumstances of each spouse, the age, health, income and employability of the parties, and the custodial provisions for any children. Given the unusual circumstances surrounding this marriage, many of these factors are inapplicable.

Furthermore, I disagree with the majority's assertion that the trial court's refusal to award the respondent a portion of the lottery winnings recognizes the date of the parties' physical separation as a "common law divorce." The term "common law divorce" surfaced in *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 259. In *Brooks*, the appellate court rejected the petitioner's suggestion that the physical separation of the parties be used as the termination date of the respondent's right to marital property. In the court's view, such a holding would effectually create "common law divorce," which is contrary to the law and policy of this State. Accord *In re Marriage of Steele* (1991), 212 Ill. App. 3d 425, 432.

In *Brooks* and *Steele*, the courts determined that the date of the parties' physical separation would not terminate the accrual of marital property. In the instant case, we recognize that the lottery winnings are marital property. Contrary to the majority, I dispute that failing to award the respondent a portion of the lottery winnings would recognize the date of their physical separation as a "common law divorce." Based on the unusual circumstances of the marriage and the fact that the parties did not contribute toward the marriage as a "shared enterprise" for 24 years, I believe the trial court's apportionment did not constitute an abuse of discretion. For these reasons, I respectfully dissent.