*In re* MARRIAGE OF SABINA BIELAWSKI, Petitioner-Appellant, and DONALD RYCROFT, Respondent-Appellee.

First District (3rd Division)   Nos. 1—01—2193, 1—02—0114 cons.

Opinion filed February 20, 2002.

Susan C. Haddad and Paul J. Bargiel, both of Chicago, for appellant.

John G. Phelps, of Rinella & Rinella, Ltd., of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

Petitioner, Sabina Bielawski, appeals from a final judgment of the circuit court denying her second amended motion to vacate the judgment and marital settlement agreement. Petitioner filed a petition for dissolution of marriage, and respondent, Donald Rycroft, filed a counterpetition. The parties entered into a marital settlement agreement on or about September 24, 1998, which was incorporated into the judgment for dissolution of marriage on September 28, 1998.

The hearing on the parties' dissolution of marriage was held between September 21, 1998, and September 29, 1998. During the trial, the parties entered into negotiations for a marital settlement agreement. Prior to calling petitioner as a witness, her attorney stipulated that the parties had been successful in entering into a negotiated settlement agreement which had been reduced to writing.

Petitioner testified that she had signed the agreement and that the terms and conditions were incorporated into the marital settlement agreement. The terms of the agreement were that respondent would pay her $12,539 per month as unallocated maintenance and support from his pension benefits, which is equal to 45% of his gross income. Upon the death of either petitioner or respondent, petitioner's remarriage or her taking up residence with an adult male on a conjugal basis, this support would terminate. Petitioner testified that she understood that she waived her right to any personal interest in respondent's personal property, i.e., his pension benefits, except to the extent that it provides a "stream of income" for her support.

Finally, petitioner testified that she understood all of the terms of the agreement, that she spent several days going over those terms with her attorney, that she believed at the time that the agreement was fair and equitable, that she intended to be bound by its terms and conditions, and that she entered into the agreement freely, voluntarily and without coercion.

Subsequently, petitioner filed her first motion to vacate the marital settlement alleging that it was unconscionable because it did not award her any part of the marital portion of respondent's pension pursuant to the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503(d) (West 2000)). Respondent filed a motion to

dismiss under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), which was granted without prejudice. Petitioner then filed an amended motion to vacate the marital settlement agreement pursuant to section 502(b) (750 ILCS 5/502(b) (West 2000)), alleging that the marital settlement agreement should be vacated because it was unconscionable. Respondent filed another motion to dismiss, which was granted without prejudice.

Petitioner then filed a second amended motion to vacate, which is the subject of this appeal. The motion to vacate argued that the marital settlement agreement should be vacated because it was unconscionable pursuant to section 502(b) of the Act and cited articles 3 and 9 of the marital settlement agreement. Article 3 of the marital settlement agreement states in pertinent part:

*"ARTICLE 3*

*UNALLOCATED MAINTENANCE AND CHILD SUPPORT*

3.1 Donald covenants and agrees that he will pay to SABINA, as and for unallocated maintenance and child support, from his CNA pension and consulting contract the sum of $12,539.00 per month which was forty-five percent (45%) of his gross income from these sources, and from which funds SABINA shall provide for the support of the children except as is otherwise herein provided. These payments shall continue *** until the first to occur of the following events:

    a. The remarriage of SABINA.

    b. The cohabitation by SABINA with an adult male on a resident, continuing, conjugal basis.

    c. The death of SABINA.

    d. The death of DONALD."

Article 9 states in pertinent part:

*ARTICLE 9*

*SETTLEMENT OF MARITAL AND PROPERTY RIGHTS*

\* \* \*

9.10 DONALD is awarded the following to be his sole and separate property, free and clear of any claim by SABINA, except as otherwise provided for in this Agreement:

\* \* \*

    b. His CNA pension benefits, however, this shall not affect SABINA's survivor rights to said benefits, or her rights to such benefits as part of the stream of income in connection with any determination of unallocated maintenance and child support or maintenance and child support or maintenance with DONALD

may be obligated to pay to her, pursuant to the terms of this agreement."

Petitioner maintains that based upon the aforementioned sections of the marital settlement agreement, it is unconscionable pursuant to section 502(b) of the Act, which provides in pertinent part:

"The terms of the agreement, except those providing for the support, custody and visitation of the children, are binding upon the court unless it finds, after considering the ecomonic circumstances of the parties and any other relevant evidence provided by the parties, on their own motion or on the request of the court, that the agreement is unconscionable." 750 ILCS 5/502(b) (West 2000).

Petitioner maintains that the trial court had continuing jurisdiction to modify, vacate or review the agreement which was incorporated into the judgment for dissolution of marriage pursuant to section 502(b) even though more than a year had elapsed since the judgment was entered, thereby making it a nonfinal order.

In the alternative, petitioner argues that under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 2000)), she is entitled to relief from the judgment because she demonstrated a meritorious claim and diligence in making this argument to the trial court.

In her second amended motion to vacate, petitioner sets forth the following additional allegations:

"[P]etitioner was denied a 'meaningful choice' with regard to respondent's pension because she had neither the information nor the opportunity to elect to take a portion of respondent's pension as her share of the marital property.

Moreover, according to a document provided by respondent's counsel the total value of the marital estate for settlement purposes was $2,200,000 at the time of the Judgment for Dissolution of Marriage incorporating the Marital Settlement Agreement entered on September 29, 1998. When the present value of the marital portion of respondent's pension as of September 29, 1998 (between $976,092 and $1,898,094) is added to the settlement value contained in Exhibit E, the total value of the marital estate at the time would have ranged between $3,176,092 and $4,098,094. Since Donald was to receive 40% of the settlement value of $2,200,000 or $880,000, and all of the present value of the marital portion of his pension in the amount of $976,092 to $1,898,094, Donald actually will receive between $1,856,092 to $2,778,094 as his share of the marital estate, which amounts between 59% and 68% of the marital estate. An award of 59% to 68% of the marital property to the husband, after an 18-year marriage where the husband had substantially greater income, earning power and capacity to acquire

assets than the wife and where the parties' 3 minor children, who were 13, 11 and 10 at the time of the Judgment was entered, is unconscionable.

Additionally, the fact that all of the attorney's fees and the parties' home equity loan are to be deducted from the proceeds of the sale of the marital home prior to a distribution of those proceeds to the parties, further reduces the petitioner's share of the marital property and makes the Agreement even more unconscionable."

Respondent issued a subpoena to petitioner's former attorney who represented her during the negotiations of the marital settlement agreement. In response, petitioner filed a motion *in limine* to bar his testimony based upon attorney-client privilege. Respondent filed a response, arguing that petitioner had waived the privilege by filing a malpractice claim against her attorney.[1] Specifically, respondent argued that petitioner had effectively waived the attorney-client privilege by bringing into issue the communications with her attorney concerning the settlement and negotiations of the marital agreement, *i.e.*, whether she made a "meaningful choice" regarding her ability to elect a share of respondent's pension as marital property.

The trial court denied petitioner's motion *in limine* in part and allowed it in part, stating:

"The Court hereby finds that:

SABINA BIELAWSKI waived her attorney-client privilege when she filed a malpractice claim against her former attorneys and made the disclosures that her attorneys advised her:

'...that she had no choice that would permit her to have the pension considered as property and further that her only right was to have the pension considered 'a part of a stream of income' in calculating the gross income.'

'...that her only choice was to accept the pension in the calculation of Rycroft's income, i.e., as part of a stream of income for purposes of unallocated maintenance of support.'

NOW THEREFORE IT IS HEREBY ORDERED THAT:

The Motion in Limine is denied as to communications between SABINA BIELAWSKI and (her attorney) involving **only the above subject matter**. The Motion in Limine is allowed as to all other communications between (her attorney) and SABINA BIELAWSKI." (Emphasis in original.)

---

[1] On September 21, 2000, petitioner filed a complaint against her divorce attorney alleging that he was guilty of malpractice for failing to determine the present value of her husband's pension; for failing to secure the pension as marital property; for failing to evaluate the tax consequences of filing the pension as income; and for advising petitioner that she had no choice but to consider the pension as a part of a "stream of income" instead of as property.

The trial court conducted a hearing on petitioner's motion to vacate. Four witnesses were called to testify at the hearing. Sander Goldstein, an insurance actuary, testified that he was employed to calculate the present value of respondent's pension. He made three calculations. The first calculation was the present value of respondent's pension as of September 29, 1998, for the pension he would receive based upon his actual retirement date. That value was calculated at $1,845,510. The second calculation determined the present value of respondent's pension as if he had actually retired on September 29, 1998, the date of the judgment. That value was calculated at $2,041,180. The third calculation determined the present value of respondent's pension as of September 29, 1998, as if he had terminated his employment with CNA on the date he was married, June 14, 1980, which resulted in a present value of $143,090.

Petitioner's former divorce attorney testified that he represented petitioner in negotiating the settlement agreement with respondent and in the trial for dissolution of marriage. During the course of his representation of petitioner, they discussed respondent's pension. Petitioner informed him that respondent had already taken his pension and that it was currently in pay status, that two attorneys had informed her that she should consider the pension as marital property, and that she wanted to know what his ideas were on how she should handle this particular asset.

He informed petitioner that there were two alternatives: either determine the present value of the pension at a particular date or treat it as a "stream of income." He also advised her to hire an actuary to determine the present value of respondent's pension. These issues were discussed during their initial meeting and "dozens of times thereafter in one form or another."

On July 9, 1998, petitioner faxed him a three-page document which she had removed from respondent's files in the marital residence. This document contained calculations of the present value of respondent's pension which came to approximately $1,540,000. After he received the fax, the attorney had another conversation with petitioner as to how they were going to use that document as evidence at trial. He suggested that they could use the document as a way of setting the present value of the pension. Since the document had been obtained by petitioner, they did not have to disclose it, but they could call respondent as an adverse witness. He also suggested that they could avoid hiring an expert witness because that would be very expensive. He testified that petitioner agreed to all of his suggestions.

During the settlement negotiations the attorney testified that he insisted, at petitioner's request, that the pension be treated as prop-

erty and that the division of the remainder of the property be 50/50. However, respondent refused to agree that the pension be treated as property, and eventually the parties agreed that the pension would be treated as a "stream of income," with the remainder of the marital property being divided 60/40, with 60% going to respondent.

Petitioner testified at this hearing that no parenting contract was ever presented to her for her signature, that she never signed one, and that as far as she knows, there is no parenting contract in existence. Her divorce attorney informed her that respondent's pension was a "stream of income" and had to be treated as such. He never told her that the pension could be treated as property, and she was never presented with an "actuarially determined present value" of respondent's pension. She did not know the value of the pension at the time she signed the marital settlement agreement, and had she known it, she would have elected to treat it as property rather than as a stream of income. After entering into the agreement, she sought the legal advice of another attorney who advised her that the pension should have been treated as property rather than as a "stream of income."

On cross-examination, petitioner admitted that at the time she retained her divorce attorney, she was aware that pension benefits were marital property, but he told her that the pension had to be treated as a "stream of income" because it was already in pay status. Furthermore, she requested an evaluation of the pension but never received one.

Respondent testified that he would not have agreed to his pension being divided as marital property.

At the conclusion of the evidence, the trial court ruled that (1) the motion to vacate was not timely under section 502(b), and (2) petitioner had not met her burden of proving that the agreement was unconscionable. The court also held that petitioner had failed to establish a meritorious claim or defense or due diligence under section 2—1401.

Four issues have been raised for our review: (1) whether the trial court's decision to deny appellant's second amended motion to vacate the marital settlement agreement was erroneous as a matter of law where the agreement gave 100% of the property interest in respondent's pension to respondent; (2) whether the trial court's finding that the agreement was not unconscionable under section 502(b) was erroneous; (3) whether the trial court erroneously determined that petitioner's second amended motion to vacate did not diligently state a cause of action for unconscionability under section 2—1401; and (4) whether it was error to deny petitioner's motion *in limine* barring her former attorney from testifying due to attorney-client privilege and/or the rule of confidentiality.

■ When a party seeks to vacate a property settlement incorporated into a judgment of dissolution of marriage, all presumptions are in favor of the validity of the settlement. *In re Marriage of Gorman*, 284 Ill. App. 3d 171, 180, 671 N.E.2d 819 (1996). A settlement agreement is not typically subject to appellate review because an agreed order "is a recordation of the agreement between the parties and *** not a judicial determination of the parties' rights." *In re Haber*, 99 Ill. App. 3d 306, 309, 425 N.E.2d 1007 (1981). However, "[a] settlement agreement can be set aside if it is shown that the *** agreement is unconscionable." *Gorman*, 284 Ill. App. 3d at 180.

■ A marital settlement is unconscionable if there is " ' "an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' [Citations.]" *In re Marriage of Steadman*, 283 Ill. App. 3d 703, 709, 670 N.E.2d 1146 (1996). Unconscionability encompasses " ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' [Citations.]" *In re Marriage of Broday*, 256 Ill. App. 3d 699, 705, 628 N.E.2d 790 (1993). The fact that an agreement " 'merely favors one party over another does not make it unconscionable.' [Citation.]" *Gorman*, 284 Ill. App. 3d at 181. "To rise to the level of being unconscionable, the settlement must be improvident, totally one-sided or oppressive." *Gorman*, 284 Ill. App. 3d at 182. "A court should not set aside a settlement agreement merely because one party has second thoughts." *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 214, 633 N.E.2d 225 (1994).

■ To determine whether an agreement is unconscionable, we must consider two factors: (1) the conditions under which the agreement was made; and (2) the economic circumstances of the parties that result from the agreement. *Hamm-Smith*, 261 Ill. App. 3d at 219.

■ Section 503(d) of the Act requires the division of marital property upon the dissolution of marriage. 750 ILCS 5/503(d) (West 1996). Marital property is "all property acquired by either spouse subsequent to the marriage." 750 ILCS 5/503(a) (West 1996). This encompasses pensions which accrue during a marriage. See *In re Marriage of Wenc*, 294 Ill. App. 3d 239, 689 N.E.2d 424 (1998). Marital property must be divided in "just proportions" in light of the relevant circumstances of the parties. 750 ILCS 5/503(d) (West 1996). "Just proportions" does not necessarily mean mathematical equality, but the distribution must be equitable under the circumstances. *In re Marriage of Morris*, 266 Ill. App. 3d 277, 281, 640 N.E.2d 344 (1994).

■ Additionally, to be entitled to relief under section 2—1401, the petitioner must affirmatively set forth specific factual allegations sup-

porting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. The quantum of proof necessary to sustain a section 2—1401 petition is a preponderance of the evidence. Whether a section 2—1401 petition should be granted lies within the sound discretion of the circuit court depending upon the facts and equities presented and will be disturbed on review only if the reviewing court finds an abuse of discretion.

■ The record reflects that during the 2½ years prior to the settlement negotiations, the parties entered into numerous stipulations regarding the value of their assets and debts. During those negotiations both parties were represented by counsel. Petitioner testified that she entered into negotiations freely and without coercion; that she fully understood and agreed with the terms of the agreement; and that she spent several days going over the agreement with her attorney before signing it.

In addition, the trial court conducted a lengthy and in-depth hearing on petitioner's motion to vacate. During that hearing it was disclosed that petitioner was aware of respondent's pension; that she knew that it could be treated as marital property; and that she discussed at length the advantages and disadvantages of receiving respondent's pension benefits as a "stream of income" versus marital property. Although petitioner argues that she did not have a "meaningful choice" in electing to treat the pension as property, the facts contained in the record belie her statement. Prior to the settlement negotiations, petitioner had discussed the respondent's pension with her attorney as early as July of 1998. She knew that the pension could be considered as marital property as early as April of 1998 because she had discussed it with two other attorneys and a financial advisor prior to retaining her divorce attorney. Additionally, petitioner argues that she acceded to the terms of the settlement because she was "under the gun." However, these negotiations occurred over a four-day period. That fact does not lend support to her claim that she was "under the gun" in making her decision. See *Steadman*, 283 Ill. App. 3d at 710 (the number of hours spent negotiating is not a "*per se* formulation of unconscionability"; the significance lies in the fact that the parties negotiated at "arm's length with the aid of counsel"). Nor does the fact that an actuary was never retained by petitioner make the agreement unconscionable. The record reflects that this particular issue was discussed between petitioner and her attorney and that she agreed that not hiring an actuary would be the most cost effective decision.

The fact that the settlement agreement is more favorable to respondent than it is to petitioner does not require reversal of the trial court's decision. See *Gorman*, 284 Ill. App. 3d at 181-82 (the fact that an agreement merely favors one party over another does not make it unconscionable; to rise to the level of being unconscionable, the settlement must be improvident, totally one-sided or oppressive).

Furthermore, the economic circumstances that resulted from the agreement do not render it unconscionable. The record reflects that without the pension benefits being considered as property, petitioner receives 60% of the marital property. If the pension benefits had been treated as marital property, petitioner would have received considerably less than she did, which would have been approximately 33%. Additionally, under the terms of the settlement agreement, petitioner is entitled to $5,000 per month for the remainder of her life after the death of respondent. Therefore, based upon these facts, petitioner's claim that the terms of the marital settlement agreement were unconscionable must fail.

In support of her position, petitioner relies heavily on the case of *In re Marriage of Brackett*, 309 Ill. App. 3d 329, 722 N.E.2d 287 (1999). However, *Brackett* is readily distinguishable because in that case the award of maintenance in lieu of property resulted from a trial and not from a settlement agreement as it did in the present case. In *Brackett*, the Second District held that the trial court's determination that an award of maintenance based upon the proceeds from the husband's pension in lieu of an award of a portion of the pension as property was erroneous as a matter of law. However, unlike the case before us, the trial court awarded the division of marital property without any evidence concerning the possible cash value of the husband's pension or the value of the marital personal property. *Brackett*, 309 Ill. App. 3d at 339.

Conversely, in this case, the award resulted from a settlement agreement that was entered into between the parties upon advice of counsel after extensive settlement negotiations, and the present values of respondent's pension and the marital estate were disclosed to the trial court. Therefore, *Brackett* is not on point. The trial court's determination that the marital settlement agreement was not unconscionable either under the Act or under section 2—1401 was not erroneous as a matter of law.

■ Lastly, we determine whether the trial court erred when it denied petitioner's motion *in limine* barring her former attorney from testifying due to attorney-client privilege or the rule of confidentiality.

The trial court entered an order denying petitioner's motion *in limine* in part based upon the fact that petitioner had waived her

attorney-client privilege when she filed a malpractice claim against her former divorce lawyer. As such, the court ruled that the two following disclosures were not protected: (1) that her attorney had advised her "that she had no choice that would permit her to have the pension considered as property" and further that her only right was to have the pension considered as "a part of a stream of income" in calculating the gross income; and (2) that her only choice was to accept the pension in the calculation of Rycroft's income, *i.e.*, as part of a stream of income for purposes of unallocated maintenance of support.

We are unable to find an Illinois case that addresses the attorney-client privilege in the context of a marital settlement agreement. However, there are cases which state that the attorney-client privilege may be waived as to a communication put "at issue" by a party who is a holder of the privilege. See *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 199-200, 579 N.E.2d 322 (1991). When a client sues her attorney for malpractice, waiver is applicable to earlier communications between the now-adversarial parties. See *SPSS, Inc. v. Carnahan-Walsh*, 267 Ill. App. 3d 586, 592, 641 N.E.2d 984 (1994) (legal malpractice claim).

In this case, petitioner filed a malpractice claim against her attorney on September 21, 2000, wherein she alleged that her attorney was negligent in failing to determine the present value of her husband's pension; for failing to secure the pension as marital property; for failing to evaluate the tax consequences of filing the pension as income; and for advising petitioner that she had no choice but to consider the pension as a part of a "stream of income" instead of as property. In the present case, her former attorney was called to testify solely as to what he told petitioner, the holder of the privilege, regarding these specific matters and not as to anything petitioner may have communicated to him. Therefore, we find that petitioner effectively waived the attorney-client privilege as to those communications and that her attorney could properly testify as to those matters.

Based upon the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

CERDA and WOLFSON, JJ., concur.