RENEE B. HARRIS, Ex'rx of the Estate of Robert Allan Harris, Deceased, Plaintiff-Appellee, *v.* ELIZABETH A. HARRIS, Defendant-Appellant.

Second District (1st Division)   No. 75-391

Opinion filed February 7, 1977.

Constantine Konstans, of Konstans & Catella, of St. Charles, for appellant.

Stephen J. Schlegel, of James P. Reedy & Associates, Ltd., of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant Elizabeth A. Harris filed an amended petition seeking to vacate a divorce decree which granted defendant's husband Robert Allan Harris the divorce on his complaint and which also confirmed a marital settlement agreement. The parties were married in 1953. The decree was entered on October 5, 1973. Both the petition and the amended petition were filed within 30 days of the entry of the divorce decree. The husband, however, died on November 28, 1973, without having responded to the amended petition, and his second wife was substituted in his behalf as executrix of his estate. The trial court denied the petition to vacate the decree without an evidentiary hearing and defendant appeals. She contends that the court abused its discretion in granting the motion to strike her amended petition and erred in denying her relief based on the pleadings without holding an evidentiary hearing.

■■ Defendant first makes the anticipatory argument that the court has the power to vacate a decree of divorce subsequent to the death of a party. Plaintiff, however, does not dispute this, and we also agree. Upon a sufficient showing that a divorce decree was wrongfully entered, the subsequent death of a party does not prevent redress of the error. See *Collins v. Collins*, 14 Ill. 2d 178, 184 (1958); *Chatterton v. Chatterton*, 231 Ill. 449, 451-52 (1907); *Danforth v. Danforth*, 111 Ill. 236, 240-45 (1884).

■■ The petition to vacate the decree filed in this case within 30 days from its entry is authorized by section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 68.3). The petition invokes the discretion of the trial court pursuant to section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 50(5)). Whether the court's discretion has been abused is tested by considering "whether the refusal violates the moving party's right to fundamental justice and manifests an improper application of discretion." *Anderson v. Anderson*, 28 Ill. App. 3d 1029, 1034 (1975).

In substance the amended petition, to which a proposed answer was appended, alleges that the relationship between the parties had become a subject of discussion between them. Defendant suggested a trial separation, but her husband stated that if they were going to be separated, he would prefer a divorce. She indicated that if he desired a divorce, she would not stand in his way. In further discussions the husband stated he was willing to file for divorce and pay the expenses of the action if and only if the defendant did not contest it and did not obtain the services of an attorney. The husband was aware of the financial difficulties of the parties and aware that an implied threat of nonpayment of legal fees would present further hardship on the defendant which she was unwilling to bear at that particular time. Mr. Harris retained an attorney, Mel Sloan, and told Mrs. Harris that he had chosen him because the attorney had been involved in a friend's divorce and had concluded a fair settlement. Harris represented that Sloan would be fair to both of them and would not recommend anything that would jeopardize her rights. Mrs. Harris had gone with her husband to Sloan's office prior to the commencement of the divorce proceedings and "was given the impression" that the marital settlement agreement normally was a matter that had to be worked out between the parties without the advice of counsel. During the subsequent negotiations between Mr. and Mrs. Harris, the husband represented that he would not pay her any alimony or support because she had no right to it, as she was employed and earned more than he did; that the three minor children should have a choice of which parent should have custody; that he should not be required to pay child support to her for the two children in her custody because of his earnings; that he would not be required to pay child support by a court; and that he wanted custody of at least one child since he would be alone after the divorce. In addition, the husband repeatedly represented that he would never remarry after the divorce, but on one occasion argued that he did not want to keep as much insurance on his life for the benefit of the children just in case he got remarried but that he did not intend to do so.

Defendant further alleged that she relied upon the plaintiff's representations that his statements of the matters of custody, child support, alimony and disposition of property "which he admittedly stated was with counselling with Attorney Sloan were true, equitable and in fact would be determined in that manner by a Court; that defendant had always regarded plaintiff as honest and truthful not only because of his being an ordained minister but also his character as an individual."

Defendant also stated that the night before the scheduled court date to secure the divorce, attorney Sloan in attempting to reach Mr. Harris telephoned Mrs. Harris and told her that the purpose of his call was to have Mr. Harris secure a witness to testify in his behalf the following morning in court. After she replied that her husband was probably not

prepared for this, Sloan indicated to her that her presence would be required and she would have to file an answer. The answer was prepared outside the presence of the defendant and submitted to her for signature. She then made a telephone call to attorney Konstans, whom she had previously consulted concerning the purchase of real estate. The attorney told her that the answer contained admissions or denials, that he could not advise her to sign or not sign, and that she would have to make the decision as to whether the divorce was proceeding properly or whether she should have another attorney. She also said that in previous conversations with Konstans, he had told her he would go over the terminology of the settlement agreement with her but would not advise her as to her rights and responsibilites since she had not retained him for complete representation.

Defendant stated that she was present at the divorce hearing when the plaintiff presented his evidence "and was aware of misrepresentations in his testimony, but again was under the distinct impression that the whole procedure was a necessary one in an 'uncontested case'." Although she considered indicating the incorrectness of some of the testimony during the hearing, she did not do so because she was fearful she would be going contrary to the total understanding with her husband. However, she alleged that subsequent to the entry of the decree of divorce, she did confer with attorney Konstans, "indicating the reservation that she had allowed misrepresentations of the plaintiff to go unchallenged in court; that she had grave reservations over the propriety of the divorce and child custody."

Later Mrs. Harris learned that her husband had been remarried a few days after the decree and "realized that the implications of such an act went beyond the fairness of the agreement." She alleged that Harris had deceived her with respect to his relationship with the new Mrs. Harris "so as to have prejudiced her position; that he defrauded her with respect to the divorce itself, property settlement, child custody and support."

The plaintiff in the motion to dismiss alleged that the court was without jurisdiction to vacate the decree on a posthumous basis; that the action did not survive against the estate of Harris; that Mrs. Harris had ample opportunity to retain counsel and to defend the action and was under no disability; and that she had accepted the benefits of the decree and was now seeking to enforce the provisions in the decree with regard to life insurance in a separate action and should therefore be estopped from contesting the validity of the decree. The motion to dismiss also alleged that the petition had failed to set forth the facts which, if proved, would give the court cause for setting aside the decree.

■■ Although the amended petition broadly prays that the divorce decree be vacated, the essential thrust of the allegations in the amended petition appears to be directed rather at the fairness of the property

settlement agreement. No claim has been made that defendant was denied an opportunity to be heard (see, *e.g., Winning v. Winning*, 366 Ill. 57, 64 (1937); *McLeod v. McLeod*, 133 Ill. App. 2d 111, 112 (1971); *McNab v. Dunsmure*, 274 Ill. App. 560, 568-69 (1934); *Forest v. Forest*, 9 Ill. App. 3d 111 (1973)); or that the evidence was insufficient to establish grounds for divorce (see, *e.g., Collins v. Collins*, 14 Ill. 2d 178, 183-84 (1958); *Chatterton v. Chatterton*, 231 Ill. 449, 452-53 (1909); *Tesar v. Tesar*, 13 Ill. App. 2d 478, 481 (1957)). The jurisdiction of the court to grant the divorce has not been challenged. The only reference to the sufficiency of the evidence is the allegation that the husband made certain "misrepresentations" in the presentation of his evidence without supporting facts. This does not amount to an allegation that the evidence was insufficient to prove that Mr. Harris had grounds for divorce.

The original petition prayed that the divorce decree be vacated or in the alternative that it be modified in accordance with equitable principles. In fact, defendant in brief and argument in this court makes the same suggestions. However, the amended petition did not pray for modification of the property settlement portion of the decree and prayed only that the divorce be vacated and set aside. Nevertheless, as we have indicated, the essential allegations of the amended petition appear to us to be aimed almost entirely at setting aside the settlement agreement.

The essence of the allegations in Mrs. Harris' amended petition may be summarized as follows: Through abuse of their confidential relationship, Mr. Harris caused her to forego having her own lawyer and induced her to enter into an unfair marital settlement agreement by indicating that he would not pay the fees of two attorneys, by stating that his attorney would conclude a settlement that was fair to both sides, and by representing that any questions of property division, alimony, child custody and child support would not be treated by the court more beneficially than in the marital settlement agreement. After consulting with an attorney, Mrs. Harris determined that her husband's representations with regard to what a court would do were probably not true. Shortly after that, she discovered that he had misrepresented the nature of his relationship with another woman and his intention to remarry after the divorce. This caused her to suspect that the agreement was intended to place her husband in the best possible position to remarry. Although the amended petition does not specifically allege that the agreement was unfair or inequitable, there are facts from which this conclusion could reasonably be inferred.

■■ As a general rule when parties to the divorce have adjusted future maintenance or property rights and the contract is embodied in a decree for divorce, that portion of the decree is considered to be by consent which, unless induced by fraud, precludes the rights of the parties. (*James v. James*, 14 Ill. 2d 295, 299 (1958).) The supreme court in *James* also

noted (at 305) that because of the interest of the public in such agreements, public policy requires not only that such agreements be free from the taint of actual fraud and coercion but also reasonably fair and sufficient.

The misrepresentation of an intention to remarry by one spouse which is believed by the other and which induces that spouse to accept certain provisions in a property settlement agreement has been held to be a basis for modifying the settlement on the grounds of fraud. (*Roth v. Roth*, 45 Ill. 2d 19, 23 (1970).) Even an intentional concealment of a contemplated remarriage has been held to be a sufficient allegation of fraud to require an evidentiary hearing. *Deahl v. Deahl*, 13 Ill. App. 3d 150, 158 (1973).

In her amended petition in this case the defendant alleges:

"Plaintiff represented that he wanted custody of at least one child since he would be alone after the divorce * * *

Plaintiff repeatedly represented that he would never remarry after the divorce, but on one occasion, argued that he did not want to keep as much insurance on his life, for the benefit of the children, just in case he got remarried, but that he did not intend to do so.

* * *

* * * the defendant was apprised that the plaintiff had remarried on or about October 20, 1973, and had realized that the implications of such an act went beyond the fairness of the agreement.

That plaintiff's present wife was mentioned by plaintiff as having accidentally meeting her and having an apartment to sublet. That the apartment moved into by the plaintiff was in fact where his present wife had all her belongings."

In our view, these allegations, although unartful, when combined with the claim that Mrs. Harris' trust in her husband and his implied threat of nonpayment of legal fees induced the defendant not to retain her own counsel, are sufficient to allow defendant to present testimony and evidence in support of the amended petition so that questions of whether Mr. Harris was guilty of fraud and coercion which induced the defendant to enter into an inequitable marital settlement agreement can be resolved by the proofs.[1] See *Guyton v. Guyton*, 17 Ill. 2d 439, 445 (1959); *Zieske v. Zieske*, 41 Ill. App. 3d 746, 749 (1976).

■■■ Under the particular circumstances of this case, including the

---

[1] It should be noted that in the *Roth, Deahl,* and *Zieske* cases, the remarriage of the wife was involved. In each case the courts viewed the misrepresentation as material to the question of the type and amount of support which would be necessary to assure that the wife was adequately provided for in the future. In the case at bar, the property settlement provisions do not appear to have been agreed to in lieu of alimony for Mr. Harris. We believe, however, that the defendant is entitled to attempt to show the materiality of the alleged misrepresentations in the instant case.

fact that the husband is now deceased, the principal matters over which defendant expressed concern in her petition—alimony, child custody and child support—could not be practically addressed even should she be successful in proving her right to vacate the settlement agreement on remand. Similarly, provisions such as the settlement of mutual obligations and insurance coverage would be dependent on the validity of the settlement agreement. If the agreement were set aside, the trial court could order an equitable property division pursuant to section 17 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 18; see *Cross v. Cross*, 5 Ill. 2d 456 (1955)). However, on the record before us, it appears doubtful that the trial court could order a division of property rights which would be more beneficial to defendant than the division under the settlement agreement which, *inter alia*, gave her a 60% interest in the marital home which was held in joint tenancy.

Nevertheless the choice of whether defendant proceeds with an evidentiary hearing to which we find she is entitled is hers to make. We therefore remand the cause with directions to permit an evidentiary hearing restricted to the question of whether the property settlement agreement entered into by the Harrises should be vacated; and if it is vacated, what division of the marital properties may be equitably awarded to the defendant.

Reversed and remanded with directions.

RECHENMACHER, P. J., and GUILD, J., concur.