*In re* MARRIAGE OF YOLANDA R. STEADMAN, Petitioner-Appellant, and JEFFREY H. STEADMAN, Respondent-Appellee.

Third District   No. 3—96—0054

Opinion filed September 16, 1996.

704

Sharon M. Warning and Sarane C. Siewerth (argued), both of Schiller, DuCanto & Fleck, of Chicago, for appellant.

Howard M. LeVine (argued), and Ross B. Shugan, both of LeVine, Wittenberg & Shugan, of Homewood, for appellee.

JUSTICE MICHELA delivered the opinion of the court:

Petitioner, Yolanda Steadman (wife), appeals the denial of her motion to vacate a judgment authorizing the dissolution of her marriage to respondent, Jeffrey Steadman (husband). She sought to prevent the incorporation of an oral settlement agreement resolving disputed issues arising from the dissolution of her marriage into the final judgment entered by the circuit court of Will County on October 5, 1995. For the reasons set forth below, we hold that the trial court committed no abuse of its discretion when it approved the terms of the negotiated oral settlement agreement.

In August of 1994, the parties separated. Wife left the marital residence located in Bolingbrook and took the couple's three youngest sons with her to a summer home while husband remained in Bolingbrook with the two eldest sons. Husband remained employed as a hospital administrator, earning a salary of $150,000, and wife, who had not worked since their marriage in 1975, petitioned the court for maintenance and support. On November 2, 1994, the trial court ordered that husband pay $2,400 a month in unallocated family support. The trial court further ordered that husband retain temporary physical custody of the two eldest children while wife would retain temporary physical custody of the three youngest children.

Wife decided to relocate to Wixom, Michigan, with the three youngest children and the record is unclear as to whether husband consented to this move. Nonetheless, wife and the three youngest children moved to Wixom, Michigan, and on August 28, 1995, husband filed an emergency petition seeking to enjoin the permanent removal of the three youngest children to Michigan. A hearing on husband's petition was scheduled for September 1, 1995.

On September 1, 1995, wife, husband and respective counsel met in court and commenced two hours of negotiations in the hallway which formed the basis of the oral settlement agreement currently at issue. Instead of arguing the merits of husband's emergency petition to enjoin the removal of his children to Michigan, the parties and their counsel presented the terms of their oral settlement agreement to the trial court. During the course of this settlement hearing, both wife and husband agreed that the following terms comprised their agreement.

First, husband agreed to the removal of his three youngest children to Michigan subject to certain visitation terms. Second, husband agreed to pay $2,775 in unallocated support to wife for three years. The monthly support was deemed nonmodifiable and nonreviewable and was taxable income to wife and a deductible expense to husband; however, wife would be able to claim the children as exemptions for federal and state income tax purposes. At the end of the three years, wife would cease to receive maintenance and, at that time, child support would be calculated using the guidelines enumerated in section 505(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505(a)(1) (West 1994)).

The terms of the property division provision left wife with a Florida condominium, a parcel of land in Colorado, a 1989 Yamaha motorscooter and a 1989 GMC van. Husband's share of the property was the marital home, vacation property in Kankakee County and a 1989 motorcycle. Additionally, wife and husband agreed that each would receive the bank accounts, securities and individual retirement accounts in his or her possession. Further, husband had a tax-deferred annuity account through his employer which, at the time of the judgment of dissolution, had a present-day cash value of $116,000. Husband and wife agreed that after paying attorney fees, repaying a loan obtained from borrowing against an insurance policy and paying interest penalties and taxes, the remainder would be divided equally between them.

At the hearing wife testified that her goal was to become self-sufficient and, to this end, she was currently enrolled in a three-year program to become a real estate broker in Wixom, Michigan. At the settlement hearing, wife engaged in the following testimony with her attorney and with the trial court:

"MR. KOZLOWSKI [Counsel for wife]: And that's the agreement we worked out today in the hall, and we will reduce it to writing with the joint custody [agreement], and you're satisfied with that?

THE WITNESS [Wife]: I have no choice.

THE COURT: Well, ma'am, I want you to understand that you do have a choice. We can sit down right now and have a formal hearing and the parties can present evidence on both sides and call any witnesses that you want and the Court will make a decision.

THE WITNESS: Okay.

THE COURT: The question I have is, is this your agreement?

THE WITNESS: At this time, yes, sir."

The judgment was scheduled to be entered on October 5, 1995.

On that date, wife's attorney, Mr. Kozlowski, withdrew his representation at her request. Wife's new counsel, Mr. Holden, was present and petitioned the trial court for a continuance. The trial court denied the motion to continue and entered the judgment of dissolution over Mr. Holden's continuing objection. On November 5, 1995, wife filed a motion to vacate the judgment of the dissolution of her marriage. Following a hearing on the petition, the trial court denied the motion to vacate the judgment of dissolution and wife now appeals.

■ We first address the husband's argument that wife's appeal should be dismissed pursuant to the release of errors doctrine, which states that generally "a litigant cannot attack a decree whose benefits he has previously enjoyed, especially if to do so would place the opposing party at a distinct disadvantage upon reversal of the decision." *Lemon v. Lemon*, 14 Ill. 2d 15, 17, 150 N.E.2d 608, 610 (1958). Specifically, husband argues that wife should not be allowed to attack the judgment of dissolution of marriage on appeal when she has already enjoyed the benefits of the judgment by being allowed to remove their three youngest children from Illinois. Husband states that he is placed at a distinct disadvantage because he gave up his right to challenge the removal of his children when both parties assented to the oral settlement agreement. Thus, while wife may have a rehearing on the financial issues she challenges on appeal, husband has been disadvantaged because the court cannot recreate the status quo that existed with respect to the children because the children have been living in Michigan since September 1, 1995, under court approval.

Wife directs our attention to an exception to the release of errors doctrine which states that where the benefit being enjoyed is separate from the judgment being appealed, no waiver of appellate rights has occurred. *Spanel v. Berkman*, 171 F.2d 513 (7th Cir. 1949). We agree that this exception is applicable to the instant case because the removal of the children is not being challenged on appeal. Further, the removal of the children is independent from the economic provisions wife challenges on appeal. Accordingly, we decline to apply the release of errors doctrine and will consider the merits of wife's argument on appeal that the trial court abused its discretion in denying her petition to vacate the judgment authorizing the dissolution of her marriage. *Harris v. Harris*, 45 Ill. App. 3d 820, 360 N.E.2d 113 (1977).

■ On appeal, wife first argues that the trial court erred in approving an award of nonmodifiable child support. While parties to a dissolution of marriage settlement agreement may agree to make maintenance provisions nonmodifiable, provisions pertaining to child

support may not be made nonmodifiable. *In re Marriage of Corkey*, 269 Ill. App. 3d 392, 397, 645 N.E.2d 1384, 1388 (1995). This general rule applies to agreements involving unallocated support. See *In re Marriage of Gleason*, 266 Ill. App. 3d 467, 639 N.E.2d 982 (1994). However, we find that this issue is rhetorical when it is plain that no award of child support is nonmodifiable. See 750 ILCS 5/502(f), 510 *et seq.* (West 1994). Thus, "the unallocated combination of child support into a taxable maintenance amount, as exists here, necessarily carries with it the statutory right to modification of child support." *Gleason*, 266 Ill. App. 3d at 468, 639 N.E.2d at 983. In the instant action, neither party's statutory right to petition for a modification of child support due to a substantial change of circumstances is impaired. Moreover, we find that the three-year limitation agreed to by husband and wife for the term of nonmodification was bargained for by wife, particularly when this three-year term coincides with her completion of her education and training as a real estate broker and her goal of becoming self-sufficient.

■ Wife next argues that the trial court's award of unallocated support is reversible error because the award does not comport with the statutory guidelines enumerated in the Act. 750 ILCS 5/505(a)(1) (West 1994). When parties to a dissolution of marriage settlement agreement, as in the instant action, agree to divide the custody of their children, there are no specific guidelines to follow. *In re Marriage of White*, 204 Ill. App. 3d 579, 582, 561 N.E.2d 1387, 1389 (1990). Wife directs our attention to several cases that deal with a split custody situation and the methodology employed by courts to determine a reasonable child support award. *In re Marriage of Duerr*, 250 Ill. App. 3d 232, 621 N.E.2d 120 (1993); *In re Marriage of Flemming*, 143 Ill. App. 3d 592, 493 N.E.2d 666 (1986); *In re Marriage of Pahlke*, 154 Ill. App. 3d 256, 507 N.E.2d 71 (1987); *In re Marriage of Keown*, 225 Ill. App. 3d 808, 587 N.E.2d 644 (1992).

These cases are distinguishable from the case at bar because they involve situations where both spouses are employed or possess the skills and education necessary to obtain employment and where the court is fashioning an appropriate award of child support rather than approving an award of unallocated family support agreed to by the spouses as a term of their dissolution of marriage settlement agreement. Thus, the trial court was not obligated to rely on the statutory guidelines enumerated in the Act.

In split custody cases a trial court may disregard the statutory guidelines in the Act and may instead consider the factors listed in section 505 of the Act. 750 ILCS 5/505(a)(2) *et seq.* (West 1994). In this respect, the trial court stated during wife's petition to vacate the

judgment of the dissolution of marriage that in considering the monthly award of unallocated support, it recognized that husband was caring for one minor son while the other son, who had reached the age of majority, was residing at husband's home while he attended college. We disagree with wife's contention that the trial court was required to engage in a separate and lengthy evidentiary inquiry when both husband and wife, through sworn testimony, presented this term to the trial court as a part of their settlement agreement.

Next, wife argues that the trial court erred by not stating its reasons for deviating from the Act's statutory guidelines. 750 ILCS 5/505(a)(1) (West 1994). In support, wife relies on section 505 of the Act, which states:

> "If the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines." 750 ILCS 5/505(a)(2) (West 1994).

We find that the mandate of the above section is inapplicable in the instant case because the above section contemplates a situation where the guidelines are applicable. The Act's statutory guidelines are applicable where the trial court is asked to fashion an award of child support when child custody is the responsibility of a single parent. Therefore, the trial court was not required to conform to section 505 of the Act and state its reasons for deviating from the guidelines when it was not obligated to apply the guidelines to a split custody situation.

■ Wife next argues that the trial court abused its discretion because it approved an unconscionable dissolution of marriage settlement agreement. Unconscionability is, among other things, a statutory ground enabling the trial court to set aside an agreement despite the fact that the law favors amicable settlements of disputes between parties seeking to dissolve their marriage. 750 ILCS 5/502(a), (b) (West 1994); *In re Marriage of Moran*, 136 Ill. App. 3d 331, 483 N.E.2d 580 (1985); *In re Marriage of Smith*, 164 Ill. App. 3d 1011, 518 N.E.2d 450 (1987). Unconscionability exists where there is " 'an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " *In re Marriage of Carlson*, 101 Ill. App. 3d 924, 930, 428 N.E.2d 1005, 1010 (1981), quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). Thus, a trial court examines the conditions under which the agreement was made and the economic circumstances of the parties resulting from

the agreement. *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 219, 633 N.E.2d 225, 232 (1994). Wife asserts that the conditions under which the settlement agreement was made included hasty negotiations and duress caused by her fear that she might lose custody of her children. She further asserts that the financial terms of the agreement unreasonably favor husband.

Wife claims that hasty negotiations deprived her of the opportunity to make a meaningful choice. We disagree. It is true that the oral settlement agreement was contrived during two hours of negotiations. However, we decline to mechanically apply an analysis based on the number of hours spent negotiating as a *per se* formulation of unconscionability. Rather, the significance lies not in the fact that the parties negotiated for two hours, but that they negotiated for two hours at arm's length with the aid of counsel.

Additionally, wife argues that the record is replete with examples demonstrating her uneasiness and lack of true assent to the terms of the settlement agreement. We find that the record demonstrates wife may have been unhappy with the settlement terms; but, this unhappiness does not negate the fact that she stated under oath to counsel and the trial court that this was her agreement. Moreover, when the trial court through close questioning presented wife with the opportunity to forego the provisions of the settlement and have a hearing, she declined and stated the terms she testified to comprised her agreement.

Wife claims that she suffered from duress because of the extreme pressure she endured because she was afraid she would lose custody of her children when she removed them from the State of Illinois. Wife bears the burden of showing duress by presenting clear and convincing evidence that she was bereft of the quality of mind necessary to make a contract. *Hamm-Smith*, 261 Ill. App. 3d at 215, 633 N.E.2d at 230. While wife's fear that she might lose custody of her children no doubt caused her anxiety, we do not recognize this as a factor impairing her ability to exercise her free will and make a meaningful choice when the record reflects that she agreed to negotiations, took part in the negotiations and then presented the substance of these negotiations, under oath, to the trial court. Many spouses may experience anxiety when appearing in court because of a petition to dissolve a marriage and this anxiety is no doubt heightened when one fears she may lose custody of her children; however, this factor, without more, does not clearly and convincingly demonstrate that one lacked the ability to make a voluntary decision.

Wife asserts that misleading statements were made by husband and his counsel when they allowed wife's new attorney, Mr. Holden,

to labor under the misapprehension caused by a typographical error that the settlement hearing had occurred on September 11, 1995, not September 1, 1995. Wife argues the significance of this error is that it would naturally have appeared to Mr. Holden that there were 10 days in between the negotiations and the settlement hearing and this tended to show that the settlement agreement was the result of a lengthy and reasoned consideration. We agree that Mr. Holden should have been apprised of this error, particularly when the record lends credence to the fact that husband and his counsel were aware of the error and its significance. However, this error is immaterial when the trial court was not laboring under the same misapprehension, and, therefore, the error cannot be said to have affected the trial court's approval of the settlement agreement.

Wife next argues that the economic terms of the settlement agreement unreasonably favor the husband and this fact demonstrates she agreed to a settlement that was unconscionable. The record demonstrates that at the settlement hearing no testimony was adduced valuing the marital assets except for the marital home. The marital home was valued at $135,000, which wife testified was a low but nevertheless close estimate of its value. Additionally, income and expense affidavits were filed by both husband and wife on November 3, 1994, and these affidavits form the basis of wife's conclusion that the economic terms of the agreement unreasonably favor husband.

Wife uses the 1994 affidavits to calculate that she received either 16.7% or 23.7% of the marital estate and that this figure renders the settlement agreement economically unconscionable. Wife's argument relies particularly on the retirement assets retained by husband, which include the tax-deferred annuity and a second unnamed employee retirement benefit which is valued at $39,000 on husband's 1994 affidavit of income and expenses. At the settlement hearing wife testified regarding the retirement assets:

"MR. KOZLOWSKI: [Counsel for wife] Now, in addition to all the property, there exists a retirement savings plan which Mr. Steadman has through his employment, is that correct?

THE WITNESS [Wife]: I guess so, yes.

MR. KOZLOWSKI: And many bills have been paid out of that account, and you and your husband have previously agreed that he would pay off a bunch of charges through that [retirement savings plan] [by] borrow[ing] the money from that [retirement savings plan], is that correct?

THE WITNESS: Yes, sir.

MR. KOZLOWSKI: Well, it was borrowed through an insurance policy and it's going to be reimbursed through that [retirement savings] plan, is that correct?

THE WITNESS: That's correct.

MR. KOZLOWSKI: In addition, there is a retirement plan and your husband is going to split the assets of that retirement plan, is that correct?

THE WITNESS: Yes."

Wife contends that this unchallenged testimony establishes that in addition to the "retirement savings plan" or tax-deferred annuity account, a second retirement benefit existed that the parties intended be split equally between themselves. However, this second retirement benefit was not incorporated in the October 5, 1995, written judgment of dissolution of marriage, and wife argues that because of this omission, husband now receives this marital asset by default, which further contributes to the economic unconscionability of the settlement agreement.

■ We first address husband's argument that this issue has been waived because no specific objection was raised below. We disagree. Although no specific objection to the financial terms was made below, we will consider the issue because in a nonjury proceeding a litigant may forego filing a post-trial motion and may assert as error grounds raised for the first time on appeal. *In re Marriage of Wright*, 212 Ill. App. 3d 392, 397-98, 571 N.E.2d 197, 200-01 (1991); 134 Ill. 2d R. 366(b)(3)(ii).

■ The October 5, 1995, judgment of dissolution of marriage stated that the division of the tax-deferred annuity account would be effectuated through a subsequent qualified domestic relations order. Counsel for husband, Mr. Howard LeVine, sent notice to wife's counsel, Mr. Holden, that such a qualified domestic relations order was scheduled to be presented *instanter* in court on October 19, 1995. Thus, wife had ample opportunity to discover the error and petition the trial court to include this omitted term in the qualified domestic relations order. Accordingly, we find the record does not support the conclusion that this omission renders the agreement economically unconscionable.

Additionally, wife argues that the value of the tax-deferred annuity account is undermined because the amount of the life insurance loan that husband was to pay back from the funds of the tax-deferred annuity account had jumped from the $43,000 to which he testified at the September 1, 1995, settlement hearing to $63,645.91, which was the figure incorporated in the final judgment of dissolution of marriage entered on October 1, 1995. However, this fact does not render the settlement agreement economically unconscionable when the October 5, 1995, judgment for dissolution of marriage expressly states that marital debts were to be paid from the tax-deferred annuity ac-

count, unambiguously expressing the intent of the parties. The record supports the reasonable inference that marital debt had been paid between September 1, 1995, and October 1, 1995, from the proceeds of the tax-deferred annuity account. Moreover, as noted above, wife had ample opportunity to challenge any discrepancies in the valuation of the retirement benefits at the October 19, 1995, court date and object to the presentation and entry of the qualified domestic relations order. Thus, we do not find that the fact that the parties agreed to equally divide the tax-deferred annuity account, after paying marital debt which necessarily lessened the amount to be shared, constitutes economic unconscionability.

We have examined the record and are unconvinced that the economic positions of the parties following the dissolution of their marriage are so inequitable that the settlement agreement must be set aside as unconscionable. Rather, it appears from the record that there was much *quid pro quo* in reaching the settlement agreement, that there were sentimental attachments to certain parcels of realty that wife bargained for and was subsequently awarded, coupled with both parties' desire to amicably end the marriage. The mere appearance that an agreement favors one party over another does not render the agreement unconscionable. *Hamm-Smith*, 261 Ill. App. 3d at 220, 633 N.E.2d at 233. Thus, we hold the settlement agreement was not economically unconscionable and find that the circuit court of Will County did not abuse its discretion in denying wife's petition to vacate the judgment of dissolution of marriage.

Affirmed.

BRESLIN, P.J., and McCUSKEY, J., concur.