THIRD DIVISION
 February 20, 2002

No. 1-01-2193; 1-02-0114 (Consolidated)

In re MARRIAGE OF SABINA BIELAWSKI, ) Appeal from the
 ) Circuit Court of
 ) Cook County.
 Petitioner-Appellant, )
 )
 and )
 ) Honorable
DONALD RYCROFT, ) Elizabeth Loredo-Rivera,
 ) Judge Presiding.
 Respondent-Appellee. )

 JUSTICE SOUTH delivered the opinion of the court:
 Petitioner, Sabina Bielawski, appeals from a final judgment of the circuit court denying her
second amended motion to vacate the judgment and marital settlement agreement. Petitioner filed a
petition for dissolution of marriage, and respondent, Donald Rycroft, filed a counter petition. The
parties entered into a marital settlement agreement on or about September 24, 1998, which was
incorporated into the judgment for dissolution of marriage on September 28, 1998.
 The hearing on the parties' dissolution of marriage was held between September 21, 1998 and
September 29, 1998. During the trial, the parties entered into negotiations for a marital
settlement agreement. Prior to calling petitioner as a witness, her attorney stipulated that the
parties had been successful in entering into a negotiated settlement agreement which had been
reduced to writing.
 Petitioner testified that she had signed the agreement, and that the terms and conditions were
incorporated into the marital settlement agreement. The terms of the agreement were that respondent
would pay her $12,539 per month as unallocated maintenance and support from his pension benefits,
which is equal to 45% of his gross income. Upon the death of either petitioner or respondent,
petitioner's remarriage or her taking up residence with an adult male on a conjugal basis, this
support would terminate. Petitioner testified that she understood that she waived her right to any
personal interest in respondent's personal property, i.e., his pension benefits, except to the
extent that it provides a "stream of income" for her support.
 Finally, petitioner testified that she understood all of the terms of the agreement, that she
spent several days going over those terms with her attorney, that she believed at the time that the
agreement was fair and equitable, that she intended to be bound by its terms and conditions, and
that she entered into the agreement freely, voluntarily and without coercion.
 Subsequently, petitioner filed her first motion to vacate the marital settlement alleging that
it was unconscionable because it did not award her any part of the marital portion of respondent's
pension pursuant to the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS
5/503(d) (West 2000)). Respondent filed a 2-615 motion to dismiss, which was granted without
prejudice. Petitioner then filed an amended motion to vacate the marital settlement agreement
pursuant to section 502(b) (750 ILCS 5/502(b) (West 2000)), alleging that the marital settlement
agreement should be vacated because it was unconscionable. Respondent filed another motion to
dismiss, which was granted without prejudice.
 Petitioner then filed a second amended motion to vacate, which is the subject of this appeal.
The motion to vacate argued that the marital settlement agreement should be vacated because it was
unconscionable pursuant to section 502(b) of the Act and cited Articles 3 and 9 of the marital
settlement agreement. Article 3 of the marital settlement agreement states in pertinent part:
 "ARTICLE 3
 UNALLOCATED MAINTENANCE AND CHILD SUPPORT
 3.1 Donald covenants and agrees that he will pay to SABINA, as and for unallocated
 maintenance and child support, from his CNA pension and consulting contract the sum of
 $12,539.00 per month which was forty-five percent (45%) of his gross income from these
 sources, and from which funds SABINA shall provide for the support of the children except
 as is otherwise herein provided. These payments shall continue *** until the first to
 occur of the following events:

 a. The remarriage of SABINA.
 b. The cohabitation by SABINA with an adult male on a resident, continuing,
 conjugal basis.
 c. The death of SABINA.
 d. The death of DONALD."

 Article 9 states in pertinent part:
 "ARTICLE 9
 SETTLEMENT OF MARITAL AND PROPERTY RIGHTS
 ***
 9.10 DONALD is awarded the following to be his sole and separate property, free and clear
 of any claim by SABINA, except as otherwise provided for in this Agreement:
 ***
 b. His CNA pension benefits, however, this shall not affect SABINA's survivor
 rights to said benefits, or her rights to such benefits as part of the stream of
 income in connection with any determination of unallocated maintenance and child
 support or maintenance and child support or maintenance with DONALD may be obligated
 to pay to her, pursuant to the terms of this agreement."
 Petitioner maintains that based upon the aforementioned sections of the marital settlement
agreement, it is unconscionable pursuant to section 502(b) of the Act which provides in pertinent
part:
 "The terms of the agreement, except those providing for the support, custody, and
 visitation of the children, are binding on the court unless it finds after considering
 the circumstances of the parties and any other relevant evidence provided by the parties,
 on their own motion or on the request of the court that the agreement is unconscionable."
 750 ILCS 5/502(b) (West 2000).

Petitioner maintains that the trial court had continuing jurisdiction to modify, vacate or review
the agreement which was incorporated into the judgment for dissolution of marriage pursuant to
section 502(b) even though more than a year had elapsed since the judgment was entered, thereby
making it a nonfinal order.
 In the alternative, petitioner argues that under section 2-1401 (735 ILCS 5/2-1401 (West
2000)), she is entitled to relief from the judgment because she demonstrated a meritorious claim and
diligence in making this argument to the trial court.
 In her second amended motion to vacate, petitioner sets forth the following additional
allegations:
 "[P]etitioner was denied a 'meaningful choice' with regard to respondent's pension
 because she had neither the information nor the opportunity to elect to take a portion of
 respondent's pension as her share of the marital property.

 Moreover, according to a document provided by respondent's counsel the total value
 of the marital estate for settlement purposes was $2,200,000 at the time of the Judgment
 for Dissolution of Marriage incorporating the Marital Settlement Agreement entered on
 September 29, 1998. When the present value of the marital portion of respondent's
 pension as of September 29, 1998 (between $976,092 and $1,898,094) is added to the
 settlement value contained in Exhibit E, the total value of the marital estate at the
 time would have ranged between $3,176,092 and $4,098,094. Since Donald was to receive
 40% of the settlement value of $2,200,000 or $880,000, and all of the present value of
 the marital portion of his pension in the amount of $976,092 to $1,898,094, Donald
 actually will receive between $1,856,092 to $2,778,094 as his share of the marital
 estate, which amounts between 59% and 68% of the marital estate. An award of 59% to 68%
 of the marital property to the husband, after an 18-year marriage where the husband had
 substantially greater income, earning power and capacity to acquire assets than the wife
 and where the parties' 3 minor children, who were 13, 11 and 10 at the time of the
 Judgment was entered, is unconscionable.

 Additionally, the fact that all of the attorney's fees and the parties' home equity
 loan are to be deducted from the proceeds of the sale of the marital home prior to a
 distribution of those proceeds to the parties, further reduces the petitioner's share of
 the marital property and makes the Agreement even more unconscionable."

 Respondent issued a subpoena to petitioner's former attorney who represented her during the
negotiations of the marital settlement agreement. In response, petitioner filed a motion in limine
to bar his testimony based upon attorney-client privilege. Respondent filed a response, arguing
that petitioner had waived the privilege by filing a malpractice claim against her attorney.[1]
Specifically, respondent argued that petitioner had effectively waived the attorney-client privilege
by bringing into issue the communications with her attorney concerning the settlement and
negotiations of the marital agreement, i.e., whether she made a "meaningful choice" regarding her
ability to elect a share of respondent's pension as marital property.
 The trial court denied petitioner's motion in limine in part and allowed it in part, stating:
 "The Court hereby finds that:
 SABINA BIELAWSKI waived her attorney-client privilege when she filed a malpractice claim
 against her former attorneys and made the disclosures that her attorneys advised her:

 '...that she had no choice that would permit her to have the pension considered as
 property and further that her only right was to have the pension considered 'a part of a
 stream of income' in calculating the gross income.'

 '...that her only choice was to accept the pension in the calculation of Rycroft's
 income, i.e., as part of a stream of income for purposes of unallocated maintenance of
 support.'

 NOW THEREFORE IT IS HEREBY ORDERED THAT:

 The Motion in Limine is denied as to communications between SABINA BIELAWSKI and (her
 attorney) involving only the above subject matter. The Motion in Limine is allowed as to
 all other communications between (her attorney) and SABINA BIELAWSKI."

 The trial court conducted a hearing on petitioner's motion to vacate. Four witnesses were
called to testify at the hearing. Sander Goldstein, an insurance actuary, testified that he was
employed to calculate the present value of respondent's pension. He made three calculations. The
first calculation was the present value of respondent's pension as of September 29, 1998, for the
pension he would receive based upon his actual retirement date. That value was calculated at
$1,845,510. The second calculation determined the present value of respondent's pension as if he
had actually retired on September 29, 1998, the date of the judgment. That value was calculated at
$2,041,180. The third calculation determined the present value of respondent's pension as of
September 29, 1998, as if he had terminated his employment with CNA on the date he was married, June
14, 1980, which resulted in a present value of $143,090.
 Petitioner's former divorce attorney testified that he represented petitioner in negotiating
the settlement agreement with respondent and in the trial for dissolution of marriage. During the
course of his representation of petitioner, they discussed respondent's pension. Petitioner
informed him that respondent had already taken his pension, and that it was currently in pay status,
that two attorneys had informed her that she should consider the pension as marital property, and
that she wanted to know what his ideas were on how she should handle this particular asset.
 He informed petitioner that there were two alternatives: either determine the present value of
the pension at a particular date or treat it as a "stream of income." He also advised her to hire
an actuary to determine the present value of respondent's pension. These issues were discussed
during their initial meeting and "dozens of times thereafter in one form or another."
 On July 9, 1998, petitioner faxed him a three-page document which she had removed from
respondent's files in the marital residence. This document contained calculations of the present
value of respondent's pension which came to approximately $1,540,000. After he received the fax,
the attorney had another conversation with petitioner as to how they were going to use that document
as evidence at trial. He suggested that they could use the document as a way of setting the present
value of the pension. Since the document had been obtained by petitioner, they did not have to
disclose it, but they could call respondent as an adverse witness. He also suggested that they
could avoid hiring an expert witness because that would be very expensive. He testified that
petitioner agreed to all of his suggestions.
 During the settlement negotiations the attorney testified that he insisted, at petitioner's
request, that the pension be treated as property and that the division of the remainder of the
property be 50/50. However, respondent refused to agree that the pension be treated as property,
and eventually the parties agreed that the pension would be treated as a "stream of income," with
the remainder of the marital property being divided 60/40, with 60% going to respondent.
 Petitioner testified at this hearing that no parenting contract was ever presented to her for
her signature, that she never signed one, and that as far as she knows, there is no parenting
contract in existence. Her divorce attorney informed her that respondent's pension was a "stream
of income" and had to be treated as a such. He never told her that the pension could be treated as
property, and she was never presented with an "actuarially determined present value" of respondent's
pension. She did not know the value of the pension at the time she signed the marital settlement
agreement, and had she known it, she would have elected to treat it as property rather than as a
stream of income. After entering into the agreement, she sought the legal advice of another
attorney who advised her that the pension should have been treated as property rather than as a
"stream of income."
 On cross-examination, petitioner admitted that at the time she retained her divorce attorney,
she was aware that pension benefits were marital property, but he told her that the pension had to
be treated as a "stream of income" because it was already in pay status. Furthermore, she requested
an evaluation of the pension but never received one.
 Respondent testified that he would not have agreed to his pension being divided as marital
property.
 At the conclusion of the evidence, the trial court ruled that (1) the motion to vacate was not
timely under section 502(b), and (2) petitioner had not met her burden of proving that the agreement
was unconscionable. The court also held that petitioner had failed to establish a meritorious
claim or defense or due diligence under section 2-1401.
 Four issues have been raised for our review: (1) whether the trial court's decision to deny
appellant's second amended motion to vacate the marital settlement agreement was erroneous as a
matter of law where the agreement gave 100% of the property interest in respondent's pension to
respondent; (2) whether the trial court's finding that the agreement was not unconscionable under
section 502(b) was erroneous; (3) whether the trial court erroneously determined that petitioner's
second amended motion to vacate did not diligently state a cause of action for unconscionability
under section 2-1401; and (4) whether it was error to deny petitioner's motion in limine barring her
former attorney from testifying due to attorney-client privilege and/or the rule of confidentiality.
 When a party seeks to vacate a property settlement incorporated into a judgment of dissolution
of marriage, all presumptions are in favor of the validity of the settlement. In re Marriage of
Gorman, 284 Ill. App. 3d 171, 180, 671 N.E.2d 819 (1996). A settlement agreement is not typically
subject to appellate review because an agreed order "is a recordation of the agreement between the
parties and *** not a judicial determination of the parties' rights." In re Haber, 99 Ill. App. 3d
306, 309, 425 N.E.2d 1007 (1981). However, "[a] settlement agreement can be set aside if it is
shown that the *** agreement is unconscionable." Gorman, 284 Ill. App. 3d at 180, 671 N.E.2d 819.
 A marital settlement is unconscionable if there is "an absence of a meaningful choice on the
part of one of the parties together with contract terms which are unreasonably favorable to the
other party." In re Marriage of Steadman, 283 Ill. App. 3d 703, 709, 670 N.E.2d 1146 (1996).
Unconscionability encompasses "an absence of meaningful choice on the part of one of the parties
together with contract terms which are unreasonably favorable to the other party." In re Marriage of
Broday, 256 Ill. App. 3d 699, 704-05, 628 N.E.2d 790 (1993). The fact that an agreement "merely
favors one party over another does not make it unconscionable." Gorman, 284 Ill. App. 3d at 181,
671 N.E.2d 819. "To rise to the level of being unconscionable, the settlement must be improvident,
totally one-sided or oppressive." Gorman, 284 Ill. App. 3d at 182, 671 N.E.2d 819. "A court should
not set aside a settlement agreement merely because one party has second thoughts." In re Marriage
of Hamm-Smith, 261 Ill. App. 3d 209, 214, 633 N.E.2d 225 (1994).
 To determine whether an agreement is unconscionable, we must consider two factors: (1) the
conditions under which the agreement was made; and (2) the economic circumstances of the parties
that result from the agreement. Hamm-Smith, 261 Ill. App. 3d at 219, 633 N.E.2d 225.
 Section 503(d) of the Act requires the division of marital property upon the dissolution of
marriage. 750 ILCS 5/503(d) (West 1996). Marital property is "all property acquired by either
spouse subsequent to the marriage." 750 ILCS 5/503(a) (West 1996). This encompasses pensions which
accrue during a marriage. See In re Marriage of Wenc, 294 Ill. App. 3d 239, 689 N.E.2d 424 (1998).
Marital property must be divided in "just proportions" in light of the relevant circumstances of the
parties. 750 ILCS 5/503(d) (West 1996). Just proportions do not necessarily mean mathematical
equality, but the distribution must be equitable under the circumstances. In re Marriage of Morris,
266 Ill. App. 3d 277, 281, 640 N.E.2d 344 (1994).
 Additionally, to be entitled to relief under section 2-1401, the petitioner must affirmatively
set forth specific factual allegations supporting each of the following elements: (1) the existence
of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the
circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition
for relief. The quantum of proof necessary to sustain a section 2-1401 petition is a preponderance
of the evidence. Whether a section 2-1401 petition should be granted lies within the sound
discretion of the circuit court depending upon the facts and equities presented and will be
disturbed on review only if the reviewing court finds an abuse of discretion.
 The record reflects that during the 2½ years prior to the settlement negotiations, the parties
entered into numerous stipulations regarding the value of their assets and debts. During those
negotiations both parties were represented by counsel. Petitioner testified that she entered into
negotiations freely and without coercion; that she fully understood and agreed with the terms of the
agreement; and that she spent several days going over the agreement with her attorney before signing
it.
 In addition, the trial court conducted a lengthy and in-depth hearing on petitioner's motion
to vacate. During that hearing it was disclosed that petitioner was aware of respondent's pension;
that she knew that it could be treated as marital property; and that she discussed at length the
advantages and disadvantages of receiving respondent's pension benefits as a "stream of income"
versus marital property. Although petitioner argues that she did not have a "meaningful choice" in
electing to treat the pension as property, the facts contained in the record belie her statement.
Prior to the settlement negotiations, petitioner had discussed the respondent's pension with her
attorney as early as July of 1998. She knew that the pension could be considered as marital
property as early as April of 1998 because she had discussed it with two other attorneys and a
financial advisor prior to retaining her divorce attorney. Additionally, petitioner argues that she
acceded to the terms of the settlement because she was "under the gun." However, these
negotiations occurred over a four-day period. That fact does not lend support to her claim that
she was "under the gun" in making her decision. See Steadman, 283 Ill. App. 3d at 710, 670 N.E.2d
1146 (the number of hours spent negotiating is not a "per se formulation of unconscionability;" the
significance lies in the fact that the parties negotiated at "arm's length with the aid of
counsel"). Nor does the fact that an actuary was never retained by petitioner make the agreement
unconscionable. The record reflects that this particular issue was discussed between petitioner and
her attorney, and that she agreed that not hiring an actuary would be the most cost effective
decision.
 The fact that the settlement agreement is more favorable to respondent than it is to
petitioner does not require reversal of the trial court's decision. See Gorman, 284 Ill. App. 3d at
181-82, 671 N.E.2d 819 (the fact that an agreement merely favors one party over another does not
make it unconscionable; to rise to the level of being unconscionable, the settlement must be
improvident, totally one-sided or oppressive).
 Furthermore, the economic circumstances which resulted from the agreement do not render it
unconscionable. The record reflects that without the pension benefits being considered as property,
petitioner receives 60% of the marital property. If the pension benefits had been treated as
marital property, petitioner would have received considerably less than she did, which would have
been approximately 33%. Additionally, under the terms of the settlement agreement, petitioner is
entitled to $5,000 per month for the remainder of her life after the death of respondent.
Therefore, based upon these facts, petitioner's claim that the terms of the marital settlement
agreement were unconscionable must fail.
 In support of her position, petitioner relies heavily on the case of In re Marriage of
Brackett, 309 Ill. App. 3d 329, 722 N.E.2d 287 (1999). However, Brackett is readily distinguishable
because in that case the award of maintenance in lieu of property resulted from a trial and not from
a settlement agreement as it did in the present case. In Brackett, the 2nd District held that the
trial court's determination that an award of maintenance based upon the proceeds from the husband's
pension in lieu of an award of a portion of the pension as property was erroneous as a matter of
law. However, unlike the case before us, the trial court awarded the division of marital property
without any evidence concerning the possible cash value of the husband's pension or the value of the
marital personal property. Brackett, 309 Ill. App. 3d at 339, 722 N.E.2d 287.
 Conversely, in this case, the award resulted from a settlement agreement which was entered
into between the parties upon advice of counsel after extensive settlement negotiations, and the
present values of respondent's pension and the marital estate were disclosed to the trial court.
Therefore, Brackett is not on point. The trial court's determination that the marital settlement
agreement was not unconscionable either under the Act or under section 2-1401 was not erroneous as a
matter of law.
 Lastly, we determine whether the trial court erred when it denied petitioner's motion in
limine barring her former attorney from testifying due to attorney-client privilege or the rule of
confidentiality.
 The trial court entered an order denying petitioner's motion in limine in part based upon the
fact that petitioner had waived her attorney-client privilege when she filed a malpractice claim
against her former divorce lawyer. As such, the court ruled that the two following disclosures were
not protected: (1) that her attorney had advised her "that she had no choice that would permit her
to have the pension considered as property" and further that her only right was to have the pension
considered as "a part of a stream of income" in calculating the gross income; and (2) that her only
choice was to accept the pension in the calculation of Rycroft's income, i.e., as part of a stream
of income for purposes of unallocated maintenance of support.
 We are unable to find an Illinois case which addresses the attorney-client privilege in the
context of a marital settlement agreement. However, there are cases which state that the attorney-
client privilege may be waived as to a communication put "at issue" by a party who is a holder of
the privilege. See Waste Management, Inc. v. International Surplus Lines Insurance Co., 144 Ill. 2d
178, 199-200, 579 N.E.2d 322 (1991). When a client sues her attorney for malpractice, waiver is
applicable to earlier communications between the now-adversarial parties. See SPSS, Inc. v.
Carnahan-Walsh, 267 Ill. App. 3d 586, 592, 641 N.E.2d 984 (1994) (legal malpractice claim).
 In this case, petitioner filed a malpractice claim against her attorney on September 21, 2000,
wherein she alleged that her attorney was negligent in failing to determine the present value of her
husband's pension; for failing to secure the pension as marital property; for failing to evaluate
the tax consequences of filing the pension as income; and for advising petitioner that she had no
choice but to consider the pension as a part of a "stream of income" instead of as property. In the
present case, her former attorney was called to testify solely as to what he told petitioner, the
holder of the privilege, regarding these specific matters and not as to anything petitioner may
have communicated to him. Therefore, we find that petitioner effectively waived the attorney-client
privilege as to those communications, and that her attorney could properly testify as to those
matters.
 Based upon the foregoing, the judgment of the circuit court is affirmed.
 Affirmed.
 CERDA and WOLFSON, JJ., concur.
-----------------------

 [1]On September 21, 2000, petitioner filed a complaint against her divorce attorney alleging
that he was guilty of malpractice for failing to determine the present value of her husband's
pension; for failing to secure the pension as marital property; for failing to evaluate the tax
consequences of filing the pension as income; and for advising petitioner that she had no choice but
to consider the pension as a part of a "stream of income" instead of as property.